## UNITED STATES *vs.* BABBIT.

1. The register of a land office is not entitled to retain a larger sum than three thousand dollars, as commissions for locating military bounty land warrants, under the acts of February 11, 1847; September 25, 1850; March 22, 1852, and March 3, 1855.

2. All fees received by a register, whether for locating military bounty land warrants, or for other services, in excess of the maximum fixed by law, must be paid into the treasury.

3. The second proviso, in the third section of the act of March 22, 1852, which declares " that no register or receiver shall receive for his services, during any year, a greater compensation than the maximum now allowed by law," is not limited in its effect to the section where it is found, but is an independent proposition, which applies alike to all officers of this class.

Writ of error to the District Court of the United States for the district of Iowa.

The United States brought debt against Lysander W. Babbit

and his sureties on his official bond as register of the land office at Kanesville, Iowa. Babbit was commissioned on the 6th of April, 1853, and held his office until the 20th of October, 1856, to which time his accounts were adjusted by the accounting officers of the treasury, showing a balance against him of $9,816 24. This amount consisted of fees received by him for locating military bounty land warrants under the acts of February 11, 1847, September 25, 1850, March 22, 1852, and March 3, 1855. The accounts credited him with commissions to the full amount of $3,000, and the balance of the fees received by him being in excess of the maximum allowed by law, the United States brought this suit to recover them. The defence was, that the fees rightfully belonged to the officer himself, and he was not bound to account for them to the United States. The question of law raised in the cause was, whether a register of the land office who has received fees for locating military bounty lands can retain them, whatever may be their amount, or whether he is bound to account for them, and pay over to the treasury all he receives beyond three thousand dollars of such fees, as of others. The District Court decided the point in favor of the defendants, and the United States brought the case into the Supreme Court on writ of error.

The *Attorney General (Mr. Bates)* for the United States.

*Mr. Reverdy Johnson,* of Maryland, and *r. Gillet,* of Washington city, for defendant.

Mr. Justice SWAYNE. This was an action in the court below, upon the official bond of the defendant, Babbit, as register of the land office at Kanesville, in the State of Iowa. The bond bears date on the 9th day of May, 1853. The petition, we are advised, is according to the practice in the courts of that State. It sets out a copy of the bond, and alleges, as a breach, that Babbit, "as such receiver, and by virtue of his office, to wit, from the 6th day of April, 1853, to the 20th day of October, 1856, received, as fees for the location of military

bounty land warrants, under the provisions of the acts of Congress approved 11th of February, 1847, 25th of September, 1850, 22d of March, 1852, and 3d of March, 1855, the sum total of $13,879 08; and that sum the said Babbit still holds, and refuses to pay to the plaintiffs, though often requested and directed by the proper officers to do so—the sum of nine thousand eight hundred and sixteen dollars and twenty-four cents."

The pleader has annexed to, and made a part of the petition, a Treasury transcript of the accounts of the register, showing the balance against him claimed by the plaintiffs.

The defendants demurred, and assigned for causes:

1. That the petition was so defective in form that the plaintiffs could not, by law, maintain their action.

2. That the petition did not set forth a cause of action in proper form.

3. That no cause of action was set forth in the petition; for that, by law, the defendant Babbit was entitled to retain the said moneys received by him, as fees of office, and was not bound to account to the plaintiffs for the same.

The petition is in striking contrast with the brevity and clearness of the common law forms in like cases. It contains, however, all the substantial elements of a good declaration, and sufficiently discloses the cause of action which the pleader designed to present.

This brings us to the consideration of the main question in the case, which is, whether the defendant Babbit is entitled to retain, for his own use, the fees in controversy? The proper solution of this question must depend upon a careful examination of the acts of Congress to which our attention has been called.

The act of April 20, 1818, (3 Stat., 466,) provides: "That, instead of the compensation now allowed by law to the registers of the land offices, they shall receive an annual salary of five hundred dollars each, and a commission of one per centum upon all moneys expressed in the receipts by them filed and entered, and of which they shall have transmitted an account to the Secretary of the Treasury: *Provided,* That the whole amount which any register of the land offices shall receive

under the provisions of this act shall not exceed, for any one year, the sum of three thousand dollars."

The act of February 11, 1847, (9 Stat., 125,) gave to certain non-commissioned officers, musicians, and privates in the Mexican war, each one hundred and sixty acres of land. This act makes no provision for fees.

The act of May 17, 1848, (9 Stat., 231,) authorized registers and receivers to receive from the holders of warrants the fees therein specified, for their services in carrying out the provisions of the act of 1847, with a proviso, that where the warrant was located for the use of the volunteer to whom it was issued, no compensation should be charged either by the register or receiver.

The act of September 28, 1850, (9 Stat., 520,) authorized the issuing of bounty land warrants to the soldiers who performed military service in the war of 1812, or in any of the Indian wars since 1790, and to the commissioned officers in the Mexican war. This act made no provision for fees; but, on the contrary, directed the locations to be made "free of expense."

The act of March 22, 1852, (10 Stat., 4,) extends the benefits of the act of 1850 to all cases where the militia or volunteers of any State or Territory were called into military service and paid by the United States, subsequent to the 18th of June, 1812.

The second and third sections of that act are as follows:

"Sec. 2. That the registers and receivers of the land offices shall hereafter be severally authorized to charge and receive for their services, in locating all military bounty land warrants issued since the 11th day of February, 1847, the same compensation or per-centage to which they are entitled by law for sales of public lands for cash, at the rate of $1 25 per acre, the said compensation to be hereafter paid by the assignees or holders of such warrants.

"Sec. 3. That registers and receivers, whether in or out of office at the passage of this act, or their legal representatives in case of death, shall be entitled to receive from the treasury of the United States, for services heretofore performed in

locating military bounty land warrants, the same rate of compensation provided in the preceding section for services hereafter to be performed, after deducting the amount already received by such officers under the act entitled 'An act to require the holders of military land warrants to compensate the land officers,' &c., approved May 17, 1848: *Provided,* That no register or receiver shall receive any compensation out of the treasury for past services, who has charged and received illegal fees for the location of such warrants : *And provided, further,* That no register or receiver shall receive for his services, during any year, a greater compensation than the maximum now allowed. by law."

The appropriation act of March 3, 1853, (10 Stat., 224,) contains at its close the following proviso :

" That whenever the amount received at any United States land office, under the third section of an act entitled 'An act to make land warrants assignable, and for other. purposes,' approved March 22, 1852, has exceeded or shall exceed the amount which the registers and receivers at any such office are entitled to receive under said third section, the surplus which shall remain, after paying the amount so due as aforesaid to said registers and receivers, shall be paid into the treasury of the United States as other public moneys."

The act of March 3, 1855, (10 Stat., 635,) provides :   .

"That each register of a land office and receiver of public moneys shall receive the same amount of pay for each and every entry of land made under the graduation act of 1854, as such officer is by law entitled to receive for similar entries of land at the minimum price of one dollar and twenty-five cents per acre : *Provided,* That the whole amount received per year shall in no case exceed the limitation fixed by existing laws."

By another act of the same date as the preceding act, (10 Stat., 701,) it is provided :

" That the registers and receivers of the several land offices shall be severally authorized to *charge and receive for their services,* in locating all warrants under the provisions of this act, the same compensation or per-centage to which they are entitled

by law for the sales of public lands for cash, at the rate of one dollar and twenty-five cents per acre, the said compensation to be *paid by the assignees or holders of such warrants.*"

The general appropriation act of August 18, 1856, (11 Stat., 91,) provides :

"That, in the settlement of the accounts of registers and receivers of the public land offices, the Secretary of the Interior be authorized to allow, subject to the approval of Congress, such reasonable compensation for additional clerical services and extraordinary expenses incident to said offices as he shall think just and proper, and report to Congress all such cases of allowance at each succeeding session, with estimates of the sum or sums required to pay the same."

The act of March 3, 1853, (10 Stat., 245,) fixes the salaries of registers and receivers in California at $3,000 each, and prohibits them from receiving any per-centage or fees, except for deciding pre-emption cases.

The act of July 17, 1854, (10 Stat., 306,) limits the salaries of the registers and receivers of Oregon and Washington Territories each to $2,500 per annum, and office rent, and prohibits them from receiving fees or emoluments of any kind, except the receivers' necessary expenses for depositing moneys.

The act of July 12, 1858, (11 Stat., 325,) gives the same compensation to registers and receivers in New Mexico which those officers receive in Washington Territory, with a proviso, that their compensation, including fees, shall not exceed $3,000 each per annum.

This is the legislation, by the light of which we are to make up our judgment in this case.

It is a rule in the construction of statutes, that all relating to the same subject-matter shall be considered together.

The act of 1818 fixes a specific sum as the maximum amount which registers shall be permitted to receive. Whenever Congress has spoken upon the subject since that time, the same policy has been adhered to. This remark applies to this class of officers alike in the Atlantic and Pacific States and Territories. The act of 1856 provides a mode of compensating them "for additional clerical services and extraordinary expenses."

The act of 1852 provides for the compensation, upon the basis of fees, of registers who had gone out of office, and of those who were then in office. The latter, for future as well as past services, were limited to the maximum then "allowed by law," which was three thousand dollars per annum.

It would be singular if one rate of compensation were provided for those *then* in office, and their predecessors, and another and a different one in respect of their successors, for the same services, rendered under the same circumstances. It is insisted by the counsel for the defendants in error that this is a necessary result, because the proviso at the end of the third section of this act, which imposes the limitation, is confined, in its operation, to the cases mentioned in the previous part of the same section. If this were so, the result claimed would not necessarily follow. In that case, we should find no difficulty in holding it to be clearly implied that the same rule of compensation should apply to their successors as to the then incumbents and their predecessors. What is implied in a statute, pleading, contract, or will, is as much a part of it as what is expressed. (2 Paine's Rep., 251,) *Koning* vs. *Bayard;* (3 Wend., 258,) *Haight* vs. *Holley;* (10 Wend., 218,) *Rogers* vs. *Kneland;* (20 Wend., 447,) *Fox* vs. *Phelps;* (Com. Dig., Tit. Devise, n. 12.)

"A thing within the intention of the makers of the statute is as much within the statute as if it were within the letter." (Plow., 366,) *Zouch* vs. *Stowell;* (3 How., 565, ) *U. S.* vs. *Freeman.*

But we do not place our decision upon this ground. We are of opinion that the proviso referred to *is not* limited in its effect to the section where it is found, but that it was affirmed by Congress as an independent proposition, and applies alike to all officers of this class.

Whether the proviso in the appropriation act of 1856 is to be construed as referring to the 3d section of the act of 1852, according to its letter, or to the 2d section, as is claimed in behalf of the Government, we have not found it necessary to consider.

The views we have expressed are sufficient to decide this

case.   They conduct us to the conclusion, that the court below erred in sustaining the demurrer.

> *Judgment of the District Court reversed, and cause remanded, with directions to proceed in conformity to the opinion of the Supreme Court.**

---

* The case of *U. S.* vs. *Coles* was, in all essential particulars, the same as that of *U. S.* vs. *Babbit.* It was heard here at the same time, and decided in the same way.