## UNITED STATES v. WILLIS.

### No. 14827.

United States Court of Appeals
Eighth Circuit.

March 18, 1954.

Rehearing Denied April 2, 1954.

Writ of Certiorari Denied
June 7, 1954.

See 74 S.Ct. 871.

S. Billingsley Hill, Atty., Department of Justice, Washington, D. C. (J. Edward Williams, Acting Asst. Atty. Gen., R. S. Wilson, U. S. Atty., Hugh M. Bland, Sp. Asst. to U. S. Atty., Fort Smith, Ark., and Roger P. Marquis, Atty., Department of Justice, Washington, D. C., with him on the brief), for appellant.

Virgil D. Willis and W. S. Walker, Harrison, Ark., submitted brief for appellee.

Before JOHNSEN and COLLET, Circuit Judges, and NORDBYE, District Judge.

JOHNSEN, Circuit Judge.

The District Court, on motion of a landowner, set aside a judgment of taking, as to a tract of 80.9 acres, which it had previously entered upon a petition and declaration of the United States seeking to condemn the tract as part of the approximately 101,000 acres of land to be used for the construction and operation of Bull Shoals Dam and Reservoir on the White River in Arkansas and Missouri, and, further, it dismissed the petition and declaration of taking as against the tract. The Government has appealed.

The question which the court purported to resolve, as a basis for its action, was, as stated in its reported opinion

108 F.Supp. 454, 460, "whether the Secretary of the Army and the Corps of Engineers acted in bad faith or so capriciously and arbitrarily in taking the defendant's land that their action was without adequate determining principle or was unreasoned."

The court held that these officials had so acted, in having included the 80.9-acre tract in the project. It said that their act of inclusion had been without "adequate determining principle", in that the general contour line which they had used in selecting and acquiring land for the project had been 700 feet mean sea level, while the tract involved had an elevation of over 800 feet, except for three small ravine-areas of not more than one-quarter acre each, which were below 700 feet mean sea level, and further that "at no place [in the project] did the government take land, lying above the 700 foot contour line, in any such amounts as that which it seeks to take in this action"—remnants or fringe parcels, not over 10 acres in area, lying above the 700 foot contour line, "were taken along with the adjoining land when in the same ownership", but otherwise, "when the taking line crossed the 700 foot contour line the small areas lying in ravines and other such places were disregarded and not taken." 108 F.Supp. at page 458.

The court further said that the action of the officials had also been "unreasoned", in that "they utterly disregarded the location of the land[1] and the admitted fact that it would never be inundated[2]; that it was a compact tract; that standing alone it was an economic unit[3], aside from its use with other adjoining land in Missouri owned by defendant; that there were ample means of ingress and egress[4]; that it was not a remnant or portion of a tract but was an entire tract and a separate unit in itself." 108 F.Supp. at pages 462 and 463.

The court thus undertook to review the administrative determination of necessity and quantity which had been made, within the qualification of bad faith or arbitrariness and capriciousness, which has sometimes been said—mostly by way of dictum[5]—to warrant judicial overthrow of administrative judgment as to condemnation taking, in relation to the legislative authority granted, and which the Supreme Court itself apparently left open in United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209, when it said, "In this case, it is unnecessary to determine whether or not this selection could have been set aside by the courts as unauthorized by Congress if the designated officials had acted in bad faith or so 'capriciously and arbitrarily' that their action was without adequate determining principles or was unreasoned." 329 U.S. at page 243, 67 S.Ct. at page 258.

Underlying the court's decision here seems to have been a belief on the part of the trial judge that the 80.9-acre tract was being taken, not for any purpose of relationship to the dam and reservoir project itself, but for some collateral use.

1. The north line of the tract was part of the boundary line between the States of Arkansas and Missouri, but the tract was contiguous to some land which the defendant owned in Missouri. 108 F.Supp. at page 456.

2. Under the engineering plans, the permanent operating level of the reservoir would be at the 654 foot contour line, and the water would not reach the 700 foot line except in periods of flood, which would have only a short duration. Id., supra.

3. "There are 18 or 20 acres of the tract in cultivation and capable of producing any kind of crops grown in that area." Id., supra.

4. "A good gravel county road enters the land on the north end [from Missouri] and crosses the entire tract in a southerly direction." Id., supra. It may, however, incidentally be observed that the record shows that the land would not be capable of being reached from any point in Arkansas except by crossing the reservoir itself or going around through Missouri.

5. See e.g. Simmonds v. United States, 9 Cir., 199 F.2d 305, 306; United States v. State of New York, 2 Cir., 160 F.2d 479, 480, 481; United States v. Meyer, 7 Cir., 113 F.2d 387, 392.

Thus, the court declared that "the facts unmistakably show that someone connected with the government has an idea that the tract of land, situated as it is, is an excellent site for the erection of private homes and clubs, and no doubt the government could recoup some of the cost of constructing the dam by taking land so situated and * * * later using it for reforestation, agricultural, grazing and recreational purposes." 108 F.Supp. at page 461.

There was evidence showing that, prior to the institution of condemnation for the dam and reservoir project, the Corps of Engineers had exhibited a map of the entire reservoir area to the public at Harrison, Arkansas, on which the 80.9-acre tract was designated as the "Blue Hole Home and Club Sites", and that an informational bulletin also had been published for public distribution, in which it was stated that "This area bordering the lake will be subdivided into lots for lease to private individuals or private clubs for the construction of summer homes or clubs." There was another similar tract of land, not here involved, projecting into the reservoir area which had been designated "Dry Run Home and Club Sites."

The Chief of the Real Estate Division, Corps of Engineers, for the Little Rock, Arkansas, area, testified that the use shown, on the map and in the information bulletin, of the 80.9-acre tract, was merely projective study and had no official finality; that he did not know what specific use would ultimately be made of the tract; that in any event this possible utilization was not the purpose for which the tract was being acquired; that it had been determined that its inclusion was necessary for the proper operation and maintenance of the reservoir; and that this was the basis on which the condemnation had been made. He further stated, "The area around the water line is acquired for the operation and maintenance of the project." Here the 80.9-acre tract was a comparatively narrow peninsula, 1900 feet in length, which extended out into and would be surrounded by the water of the reservoir on three of its four sides.

The court apparently did not accord any significance to these aspects in relation to the administrative determination. It said: "The testimony does not disclose any fact showing that the defendant's land will be used for the purposes [flood control] set forth in the statute under which the Secretary of the Army proceeded to condemn and take the land.[6] But, the testimony abundantly establishes that the land may be useful to the government in the future for other purposes; that is, such purposes as some planner of the course of the lives of the citizens may have in mind." 108 F.Supp. at page 462.

Whatever might be the validity otherwise—which we need not decide—of the considerations on which the court relied, as indicating that the administrative determination had been without adequate determining principle and had been unreasoned, these factors could not in any event be allowed to control the question of arbitrariness and capriciousness, without also taking into account the reality, to which we have referred, that the 80.9-acre tract extended as a comparatively narrow peninsula, 1900 feet in length, into the heart of the reservoir; that it would be left surrounded on three sides by the water of the reservoir; and that it was without access by land except through another State.

The tract could well be, as the Government says, an excellent vantage point for supervision of the reservoir. And, on the other hand, if left in private hands, it could perhaps give rise to difficulties of sedimentation and control of activities, in relation to the lake itself, as well as problems for the school, police, fire and other systems of the State of Arkansas.

In any event, it seems to us that it would not be legally possible to call the judgment of the Engineering Corps arbitrary and capricious, in having deter-

---

6. The statutes involved are 52 Stat. 1215, 33 U.S.C.A. § 701c–1; 55 Stat. 638, 33 U.S.C.A. §§ 701c note, 701m.

**4**

mined that it was expedient, as a matter of sound relationship to the practical operation and maintenance of the reservoir, for the Government to acquire as part of the project, and so have control of, the relatively small 80.9-acre tract, which extended as a narrow peninsula into the heart of the reservoir; which would be surrounded by the water of the reservoir on three of its four sides; which was the subject of only slight economic use (18 to 20 acres in actual cultivation); which had only a small economic value (it was stipulated that just compensation for the land would be $1800); and which had been purchased by defendant, after the plans for the project had been revealed, obviously as a site for private resort homes to be built within the reservoir area.

The Government has asked us to declare that the court should have denied relief upon the pleadings, but it did not choose to make such a stand itself, and in its brief it has argued matters of evidence to which we have given consideration.

Reversed and remanded.