UNITED STATES of America, Appellant,

v.

CERTAIN REAL ESTATE LYING ON THE SOUTH SIDE OF BROAD STREET Between Eighth Avenue, South, and Ninth Avenue, South, and Certain Property Situate on the Eastern Side of Ninth Avenue, South, Between Broadway and McGavock Streets, in the CITY OF NASHVILLE, TENNESSEE: and D. A. Puckette, et al., Appellees.

No. 12081.

United States Court of Appeals Sixth Circuit.

Dec. 10, 1954.

Edmund Clark, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Washington, D. C., Fred Elledge, Jr., Nashville, Tenn., on brief, for appellant.

Tom Stewart, W. B. Pendleton, Nashville, Tenn., W. B. Pendleton, Lewis S. Pope, Nashville, Tenn., on brief, for appellees.

922

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The United States, through the District Attorney for Middle Tennessee and upon request of the Administrator of the Federal Works Agency, filed on January 2, 1947, a petition for the condemnation of certain downtown real estate in Nashville, Tennessee, "for use as a Federal Office Building." Included in the lands sought to be condemned was Tract 14, owned by the appellees, D. A. Puckette, et al. The petition was filed, so it stated, pursuant to the authority of the Act of August 1, 1888, 25 Stat. 357, U.S.C.A., Title 40, § 257; the Public Buildings Act of May 25, 1926, 44 Stat. 630, as amended, Title 40, § 341, U.S.C.A., and several other specified Acts, including the First Deficiency Appropriation Act of 1946, approved December 28, 1945, 59 Stat. 638.

The Federal Works Administrator on March 4, 1948, filed a declaration of taking and deposited simultaneously in the registry of the United States District Court $60,000 as the estimated amount of just compensation for the land owned by appellees, with the improvements thereon which consisted of a three-story brick building in use as a hotel. The Government took possession of this property on May 8, 1948, and, since that date, has remained in continuous possession. The hotel building has been remodeled by the Government and is now being used for office and storage purposes by several Federal agencies.

The modern Federal Office Building has been constructed and is now in constant use. This office building does not physically cover any part of Tract 14, which was owned by appellees.

A trial by jury was had to determine the amount of just compensation to be awarded appellees for their property taken; and a verdict was returned, but the District Judge set aside the verdict and granted a new trial. The appellees then filed an amended answer asserting that their property had not been taken lawfully, in that no part of the Federal Office Building is located thereon; and that private property may not be taken for public use by condemnation except for immediate use. They prayed that the declaration of taking and the writ of possession be set aside; that the title to Tract 14 be divested out of the United States and vested in them; that the Government be required to place their property in the same condition as when taken; and that a reasonable rental therefor be awarded against the Government.

The United States District Court entered judgment declaring the condemnation of the Puckette property to have been unlawful, null and void; ordered the same to be set aside; divested title to Tract 14 out of the United States Government and vested the title thereto in appellees.

The District Court decreed further that the Government, having had exclusive and continued possession of the Puckette building and premises since May 8, 1948, should be required to pay appellees a reasonable rental therefor and to pay them for any damage done as a result of alterations made by the Government. A reference to a Special Master was ordered to determine such reasonable rental and damage. The decree provided further that the $60,000 paid by the Government into the registry of the court as the appraised value of the Puckette property might be offset against the amount found by the Special Master as due appellees for reasonable rental and resultant damage during the period of occupancy by the Government. An appeal from this judgment was duly prosecuted by the United States to this court.

The United States District Judge delivered an oral opinion and filed required findings of fact and conclusions of law. Among his salient findings, the Judge asserted that, notwithstanding prior knowl-

edge that no part of the new Federal Office Building would 'cover any part of the Puckette tract, the Government had "proceeded to condemn such tract under color of authority of the aforementioned Appropriation Act and related procedural Statutes"; that issue had been joined and a trial had ensued to fix the value of the property so taken. The Judge stated that the jury had awarded appellees $100,000 as just compensation for the land taken, but that the verdict had been set aside and appellees had been granted a new trial.

The United States District Court found further that at no time since plans for the new Federal Office Building were adopted had any Government agencies concerned entertained any definite plan for use of the Puckette tract by the Government. The Court found that a plan once considered by the Administrator that this tract be cleared and used as parking space in connection with the new building had been abandoned and a plan had been adopted and put into effect whereby the old building on the Puckette tract was used as additional office space. To this end, the old building had been remodeled and has been used by the Government for office and storage purposes.

It was found further that no evidence adduced gave "any hint whatsoever that such use of the old building will not continue indefinitely." There was said to be a clear implication from certain testimony that the existing use of the old building is convenient to the Government and will be continued for an indeterminate time, unless prevented by the court.

As to the physical setup, the Court made additional findings that a small strip, some five feet wide on the north side of the Puckette building, adjoins a vacant lot and is being used as a private parking lot by Government employees and is not open for use by the public or by persons having business to be transacted in the new building. Along this line it was found, moreover, that the Puckette tract is separated from the land on which the new office building has been erected by a public alley, or roadway; and that the Puckette tract and the lot on which the new office building stands are separated and not contiguous parcels of land. There is a finding, also, that there is a large lot between the Puckette tract and the public alley.

The Court stated the conclusions that the taking by the Government of the property involved was unnecessary, inasmuch as it was not needed and was not used in the construction of the new Federal Office Building for which provision was made in the Appropriation Act. The Court concluded that the taking was illegal, in that the appropriation by Congress was made for the purpose of acquiring a site for the construction of a new Federal Office Building, and not for the purpose of condemning and taking an existing building and remodeling it for use as a Government office building and storehouse in addition to the new building authorized by the Act.

Another conclusion of the District Court was that the use of part of the Puckette tract as a private parking lot for Government employees is not a public use; that it was not authorized by law; and that therefore the condemnation of the tract for such purpose is void.

The District Court stated further the following conclusions:

"It appearing from all the facts in the case that the taking of the property was not only unnecessary, but was not in accord with the provisions of the appropriation act authorizing the acquisition of a site for a new Federal Office Building, the owner thereof is entitled to have the property returned to him and the title thereto divested out of the Government and vested in him.

"The defendant landowner is entitled to damages for the wrongful taking of said property, including a reasonable rental for the time the plaintiff has had possession of same, and a reference will

be had to a special master to determine the reasonable rental value of said property and any other damages that the defendant landowner might be entitled to.

"The sum of $60,000.00, heretofore paid into Court by the Government as the appraised value of the property at the time of filing the Declaration of Taking may be offset against such sum as is found by the special master to be due the Defendants as the reasonable rental value of said property and for damages done thereto, during the period of Government occupancy and possession."

Finally, it was held that the landowners were not guilty of any acts constituting an estoppel.

It would seem from the oral opinion of the Judge that he considered authority of the Administrator of Public Works to condemn to be limited strictly to the authority contained in the Appropriation Act and that the Administrator could not pursue condemnation proceedings under the Act of May 25, 1926, and its subsequent amendments, these being in his opinion merely procedural Acts. Appellant takes the position that the condemnation authority granted to provide for Federal buildings is not limited by the Act appropriating money for the construction of a particular Federal office building; and that in the instant case the condemnation of Tract 14 (the Puckette property) was authorized by the Act of May 25, 1926, as amended. U.S.C.A., Title 40, section 341. This section provides: "To enable the Administrator of General Services to provide suitable accommodations in the District of Columbia for the executive departments, and independent establishments of the Government not under any executive department, and for courthouses, post offices, immigration stations, customhouses, marine hospitals, quarantine stations, and other public buildings of the classes under the control of the Administrator of General Services in the States, Territories, and possessions of the United States, he is authorized and directed to acquire, by purchase, con-

demnation, or otherwise, such sites and additions to sites as he may deem necessary, and to cause to be constructed thereon, and upon lands belonging to the Government conveniently located and available for the purpose (but exclusive of military or naval reservations), adequate and suitable buildings for any of the foregoing purposes, * * * and to purchase buildings, if found to be adequate, adaptable, and suitable for the purposes of sections 341, 342, 344, 345, 346, and 347 of this title, together with the sites thereof, and to remodel, enlarge, or extend such buildings and provide proper approaches and other necessary improvements to the sites thereof. * * *"

■ It seems quite clear that the Federal Works Administrator had appropriate authority under this Act to condemn sites selected by him for the erection of an authorized public building; and that condemnation for such purpose is for a public use. As was declared by the Supreme Court more than fifty years ago, in Shoemaker v. United States, 147 U.S. 282, 298, 13 S.Ct. 361, 390, 37 L.Ed. 170: "The adjudicated cases likewise established the proposition that while the courts have power to determine whether the use for which private property is authorized by the legislature to be taken is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is exhausted; * * *." The quantity of property needed and whether the taking of a particular piece of property is necessary are not subject to inquiry by the courts.

This proposition was re-stated in United States v. Gettysburg Electric Railway Company, 160 U.S. 668, 685, 16 S.Ct. 427, 431, 40 L.Ed. 576, in the following language: "The use for which the land is to be taken having been determined to be a public use, the quantity which should be taken is a legislative, and not a judicial, question. Shoemaker v. United States, 147 U.S. 282–298, 13 S.Ct. 361 [37 L.Ed. 170]." See also

Sweet v. Rechel, 159 U.S. 380, 395, 16 S.Ct. 43, 40 L.Ed. 188.

It was not for the United States District Court to say that more land was taken than was actually needed. We are of opinion that the condemnation of the Puckette tract, No. 14, was authorized by the above quoted Act of May 25, 1926, as amended, which, in express terms, authorizes the purchase or condemnation of existing buildings as well as the construction of new buildings for the general purpose of housing Government agencies.

Basing their argument on the finding of the District Court that "any plan to construct a building which would have covered Tract No. 14 was abandoned prior to the filing of the declaration of taking," the appellees argue that the District Court was right as a matter of law in holding that the Puckette property was not condemned for the purposes authorized in the Appropriation Act of December 28, 1945, 59 Stat. 638, which, inter alia, provides: "Federal office building, Nashville, Tennessee: For the acquisition of a site in Nashville, Tennessee, by purchase, condemnation, or otherwise, and the construction thereon of a new Federal office building for the use and accommodation of the United States, including the Veterans' Administration, $5,575,000."

Appellees point to the opinion of Chief Justice Hughes in City of Cincinnati v. Vester, 281 U.S. 439, 448, 50 S.Ct. 360, 363, 74 L.Ed. 950, wherein the validity of the excess condemnation of lands upon the ground of noncompliance with state law was challenged by the landowners. The Supreme Court there asserted it to be the rule in Ohio, as elsewhere, that the power conferred upon a municipal corporation to take private property for public use must be followed strictly; and the conclusion was reached that proceedings for excess condemnation of the properties involved were not in conformity with the applicable law of the state. The Chief Justice said that "under the guise of an excess condemna-

tion pursuant to the authority of the constitutional provision of Ohio, private property could not be taken for some independent and undisclosed public use."

It would seem that the opinion in City of Cincinnati v. Vester, supra, does not in anywise profess to impair the principle enunciated in the foregoing quotation of the Supreme Court in Shoemaker v. United States, supra, or in the Gettysburg case, supra. The "taking" of excess property in the Cincinnati case was "for some independent and undisclosed public use."

 We consider that the position of the Government is sound upon the proposition that the Act of December 28, 1945, supra, which appropriated funds for the construction of a new Federal Office Building in Nashville places no limitation upon the general authority to condemn property for public use as provided in the Act of May 25, 1926. Contrary to the District Court's view, this Act is not in our judgment merely procedural, investing the Administrator with the power to condemn only where Congress has appropriated funds for a particular acquisition of property. Authority to condemn must, of course, always have its source in a statute, Hooe v. United States, 218 U.S. 322, 335, 336, 31 S.Ct. 85, 54 L.Ed. 1055; and where no other Act of Congress vests power to condemn property for a particular purpose an applicable appropriation Act may be looked to as the source of such power. See Polson Logging Co. v. United States, 9 Cir., 160 F.2d 712, 714, and cases there cited, including United States v. Threlkeld, 10 Cir., 72 F.2d 464, certiorari denied 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708. But the authority to condemn is not negatived or affected by the limitation fixed upon costs in the authorization of a Government official to purchase property for a particular public use. See Albert Hanson Lumber Co. v. United States, 261 U.S. 581, 587, 43 S.Ct. 442, 444, 67 L.Ed. 809, in which the Supreme Court said: "The provision authorizing

the Secretary to purchase at a cost not to exceed a specified amount has nothing to do with the judicial ascertainment of just compensation for the property condemned. Shoemaker v. United States, 147 U.S. 282, 302, 13 S.Ct. 361, 37 L.Ed. 170."

In our view, the reasoning in the opinion of the Supreme Court in United States v. Carmack, 329 U.S. 230, 236, 242, 243, 247, 67 S.Ct. 252, 254, 91 L.Ed. 209, leads to the inescapable conclusion that the United States District Court committed reversible error in the case at bar. There, the highest court asserted that both the general Condemnation Act and the Public Buildings Act expressly authorized the acquisition by condemnation of land by the United States as a site for a United States post office, customhouse, or courthouse. General authority to condemn in furtherance of stated programs was conferred; and neither Act imposed expressly any limitation upon the authority of the officials designated by Congress to exercise the power of condemnation in procuring sites for public buildings deemed necessary by such officials to enable the Government to perform certain specified functions. The opinion writer stated: "Far removed from the time and circumstances that led to the enactment of these statutes in 1888 and 1926, this Court must be slow to read into them today unexpressed limitations restricting the authority of the very officials named in the Acts as the ones upon whom Congress chose to rely." Authority was found to be vested in the designated officials, by the broad terms of the Public Buildings Act, to select the sites which they chose. It was held that the comparative desirability and necessity for a site were matters for legislative or administrative determination rather than for a judicial finding. Numerous of its previous decisions were cited, including Shoemaker v. United States, supra, and United States ex rel. Tennessee Valley Authority v. Welch, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843.

The effect of the judgment of the district court was to overrule administrative judgment as to the necessity of acquiring the Puckette tract, No. 14, contrary to the doctrine of the Carmack case.

Appellees emphasize the opinion of United States District Judge Miller in United States v. 209.25 Acres of Land, More or Less, D.C.W.D.Ark., 108 F. Supp. 454, wherein the petition and declaration of taking by the Government as to a certain tract of land was dismissed and the title to the land revested in the defendant. This judgment of the District Court was reversed on appeal. United States v. Willis, 8 Cir., 211 F.2d 1, 3. The Court of Appeals considered that it would not be possible legally to designate the judgment of the engineering corps of the United States Army "arbitrary and capricious" in determining that it was expedient to acquire, as a part of the reservoir project involved, a small eighty-and-nine-tenths-acre tract extending as a narrow peninsula into the heart of the reservoir. There is no more reason here than was found in the Willis case to consider the judgment of the Public Works Administrator arbitrary and capricious in selecting and taking by process of condemnation the Puckette tract for public use.

■ We do not accept the argument of appellees that any real significance attaches to the letter of the Commissioner of Public Buildings to Senator McKellar, in which the Commissioner stated that the Government should acquire all the southwest quarter of the block, including the Puckette property, though not needed for immediate expansion but in the interim usable for parking automobiles by persons having business with the Federal Government. The Commissioner stated that, after careful study of probable further Federal developments in Nashville, he had come to his conclusion. The record shows that the building on the Puckette tract has been and is now being used for the housing of Federal agencies and for Government

storage purposes. We are of opinion that condemnation of the Puckette tract fell within the discretion of the Public Works Administrator and that the exercise of his discretion was not reviewable by the United States Court, unless palpably arbitrary, capricious, or otherwise unlawful; and we think it was not.

Appellees cite three decisions in support of the rule of construction that as between general and specific statutes covering the same subject matter, the specific statute is controlling. United States v. Babbit, 1 Black 55, 66 U.S. 55, 17 L.Ed. 94 [involving fees to the register of a land office]; State of Missouri v. Ross, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46 [involving the relative rank of claims in bankruptcy of a state and one of its municipalities]; and United States v. Sweet, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473 [involving title to lands in Utah claimed by an alleged assignee of the State under a school land grant]. None of these cases remotely resembles the instant case in relation to the factual situation presented. Moreover, as we have already asserted, we think that the Appropriation Act of December 1945 does not limit the general authority to condemn granted by the Act of May 25, 1926, as amended.

Holding this view, we find no expression to gainsay it in two other cases cited by appellees. Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297, 308; and United States v. 1010.8 Acres, More or Less, in Sussex County, Delaware, D.C.Del., 77 F.Supp. 529. In the first cited case, the Court of Appeals said: "The right of eminent domain is statutory, and the enforcement of it is subject to a compliance with the conditions and requirements prescribed by statute. [Citing authorities.] The jurisdiction conferred on the court being statutory, the court in entering its judgment could not go further than permitted by statute. [Citing authorities.]" In our opinion, the Public Works Administrator *did* comply with the conditions and requirements of the Act of Congress authorizing condemnation for the Federal Office Building with which we are here concerned.

There remains for discussion only the motion of appellees to dismiss this appeal on the ground that the judgment from which the appeal was taken is not a *final* judgment, inasmuch as a reference to a Special Master to determine just compensation remains unexecuted, and the appeal is therefore said to be premature. The right to appeal rests upon section 128 of the Judicial Code [section 1291, Title 28, U.S.C.], which limits review to "final decision" in the District Court. As was said in Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911: "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. * * * Hence, ordinarily in condemnation proceedings appellate review may be had only upon an order or judgment disposing of the whole case, and adjudicating all rights, including ownership and just compensation, as well as the right to take the property. [Citing cases.]" It is important to note that, in the opinion in the Catlin case, the Supreme Court said that, *if the motion to dismiss had been granted* and judgment of dismissal entered, there would clearly have been an end to the litigation and "appeal would lie within Section 128." The Supreme Court cited United States v. Carey, 9 Cir., 143 F.2d 445, 450 and United States v. Marin, 9 Cir., 136 F.2d 388. In the first-cited case, the Court of Appeals held that where the Government had filed a declaration of taking and had deposited estimated compensation to the landowners in the registry of the United States District Court, pursuant to statute, title to the lands described in the declaration of taking became vested in the United States and could not be divested by dismissal of the petition for condemnation. In the Marin case, the same Court of Appeals reversed the judgment of the District Court, which granted a motion to dismiss a condemnation pro-

ceeding instituted by the Government on the ground that the use and purpose for which the property was taken was for a private and not a public use. It was held that condemnation of land for the expansion of a private plant producing essential war materials is an appropriate means to a legitimate public end. The Court observed that the details of arrangements to be worked out between the Government and the private operator were of no concern to the appellee landowners.

In the case before us, the decree dismissed the Government's condemnation proceeding and divested out of the United States the title to the Puckette tract and vested title in appellees. This brings the case within the ambit of the long-established doctrine of Forgay v. Conrad, 6 How. 201, 204, 47 U.S. 201, 204, 12 L.Ed. 404 in which more than a hundred years ago Chief Justice Taney wrote as follows: "And when the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this court, although so much of the bill is retained in the Circuit Court as is necessary for the purpose of adjusting by a further decree the accounts between the parties pursuant to the decree passed." This language was quoted with approval in 1868 by Chief Justice Chase in Thomson v. Dean, 7 Wall. 342, 346, 74 U.S. 342, 346, 19 L.Ed. 94. See also, in accord, opinion of Mr. Justice Sutherland in Gulf Refining Co. v. United States, 269 U.S. 125, 136, 46 S.Ct. 52, 70 L.Ed. 195 (decided in 1925).

The motion to dismiss the appeal is overruled; the judgment is reversed, and the case is remanded to the United States District Court for further procedure in conformity with this opinion.