UNITED STATES of America,
Plaintiff-Appellee,

v.

Arison AGEE, etc., et al., Defendants-Appellants.

No. 15161.

United States Court of Appeals
Sixth Circuit.

Aug. 30, 1963.

Z. T. Osborn, Jr., Nashville, Tenn., for appellants, C. Allen High, Denney, Leftwich & Osborn, Nashville, Tenn., on the brief.

Elizabeth Dudley, Atty., Dept. of Justice, Washington, D. C., for appellee,

Ramsey Clark, Asst. Atty. Gen., Kenneth Harwell, U. S. Atty., Nashville, Tenn., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., on the brief.

Before CECIL, Chief Judge, and MILLER and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an eminent domain proceeding involving the right of the United States to condemn certain land in Wilson County, Tennessee, selected by the Secretary of the Army for acquisition in connection with the Old Hickory Lock and Dam on the Cumberland River.

The tract in question was owned by Arison W. Agee, now deceased, who was *non compos mentis* and an inmate of a mental institution at the time of the taking. Following the death of Agee, the case was revived in the name of his heirs and the administrator of his estate.

Condemnation of the land is sought by authority of the Declaration of Taking Act of February 26, 1931, 46 Stat. 1421, 40 U.S.C. § 258a; the general condemnation Act of April 24, 1888, 25 Stat. 94, 33 U.S.C. § 591; the Act of July 24, 1946, 60 Stat. 634, 636, which approved the Old Hickory Lock and Dam and other projects; and the Act of July 27, 1953, 67 Stat. 197, which appropriated funds for the project.

The Agee tract contains 57.6 acres and is located within twenty miles of the dam. A portion of the tract comprising 24.6 acres is below the high water line of the reservoir. The access road to the remaining 33 acres is also below the high water line. The right to take the 24.6 acre portion of the tract is not contested. The guardian ad litem, appointed by the court for the landowner, by supplemental answer challenged the Government's right to take the 33 acres above the high water line, insisting that this 33 acre portion of the tract was not needed for the project, that it was not taken for public use, and that the determination by the Secretary of the Army in selecting this portion of the tract for condemnation was arbitrary, capricious and made in bad faith. The guardian ad litem prayed that the order taking the land above the high water mark be set aside and the title restored to the landowner, and for a temporary injunction.

It was contended on behalf of the United States that the determination by the Secretary of the Army to condemn the land above the high water mark is final and not subject to judicial review and that the question of whether the decision was arbitrary and capricious and made in bad faith presents no issue justiciable in the courts; and further that there is nothing in the record to establish arbitrariness, capriciousness or bad faith on the part of the officials in taking the entire tract.

The District Court held that, while the scope of judicial review of administrative decisions as to what lands are to be acquired in condemnation proceedings is extremely narrow, there is no controlling authority foreclosing the power of the court to set aside a taking where the designated officials responsible for the taking have acted in bad faith. The trial court then proceeded to consider the case on its merits and found that the Government officials did not act in bad faith in taking the 33 acres above the high water mark.

In his opinion the District Judge found that the basic plans for the project required the acquisition of all lands lying below 451 feet mean sea level and that the taking line generally followed the 451-foot contour; that deviations were made in some instances to acquire areas above the 451-foot elevation for public access sites and for other purposes directly connected with the maintenance and operation of the project; additionally, that where the 451-foot contour traversed a tract and destroyed the access, and the cost of providing new access exceeded the value of the land, it was the policy of the Corps of Engineers to take the entire tract; that in

such cases if the landowner, despite the loss of access, desired to keep the unaffected portion of his land and agreed to waive severance damages, he was permitted to do so; that while other property owners in the vicinity who were willing to waive severance damages were permitted to keep unaffected portions of their land, Agee was not offered this choice because he was mentally incompetent to have executed a binding agreement; that, if Agee had been capable of making such an agreement, he would have been afforded an opportunity to waive severance damages and retain the lands not flooded; that, after the taking, the value of lands in the vicinity have increased substantially; and that the tract in question subsequently has been leased to the Girl Scouts of America, a nonprofit organization, for a rental of one dollar.

In this court appellants contend that the landowner was deprived of property without due process of law in that (1) the privilege of retaining unflooded lands was accorded other property owners electing to waive severance damages, but denied to Agee because he was *non compos mentis* and incapable of entering into a binding agreement; (2) the administrative representative of the Corps of Engineers made a determination that the cost of providing access would exceed the value of the remainder of the tract where no standards had been fixed by the condemning authority for the determination of this question; and (3) the United States had no present use and no plan for future use of the unflooded lands at the time of the taking.

Appellee makes no attempt to reverse the decision of the District Court in favor of the United States, but contends that the District Court took a mistaken view of its scope of review, in that neither the District Court nor this Court is authorized to investigate and weigh the soundness of the reasons of the administrative authority for taking all of this tract of land, rather than the portion of it below the high water mark. Appellee further contends that if it be

assumed that the District Court had authority to re-examine this question, its conclusions were correct.

▬ First we consider the question of the scope of judicial review. Appellee urges that the District Court and this court are foreclosed absolutely from reviewing the decision of the condemning authority. We are unwilling so to hold, though it is well-established that the scope of judicial review of administrative determinations in eminent domain proceedings is extremely narrow. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27; United States v. Certain Real Estate Lying on the South Side of Broad Street, 217 F.2d 920 (C.A. 6).

The case of United States ex rel. T. V. A. v. Welch, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843, is relied upon by appellee as authority for the proposition that there can be no judicial review. We do not so interpret the case, and construe it to be authority supporting the action of the District Court. It is true that Mr. Justice Reed raised the question in his concurring opinion as to whether the opinion of the Court implied that there was no judicial review of T.V.A.'s determination to condemn isolated lands which would not be flooded in the Fontana Dam project, saying: "This taking is for a public purpose but whether it is or is not is a judicial question," and that "the constitutional doctrine of the Separation of Powers would be unduly restricted if an administrative agency could invoke a so-called political power so as to immunize its action against judicial examination in contests between the agency and the citizen." 327 U.S. at 556–557, 66 S.Ct. at 720 (concurring opinion).

Mr. Justice Frankfurter did not read any such implication into the opinion of the Court, saying in his concurring opinion: "This Court has never deviated from the view that under the Constitution a claim that a taking is not 'for public use' is open for judicial consideration, ultimately by this Court." 327 U.S. at 557, 66 S.Ct. at 720. He further pointed out: "All the cases cited in the

Court's opinion sustaining a taking recognize and accept the power of judicial review. I assume that in citing these cases the Court again recognizes the doctrine that whether a taking is for a public purpose is not a question beyond judicial competence." 327 U.S. at 557–558, 66 S.Ct. at 720 (concurring opinion).

It is significant that in subsequent decisions the Supreme Court has cited the Welch case, not as authority against the right of judicial review, but for the proposition that the role of the judiciary in reviewing the administrative decision is an extremely narrow one. Berman v. Parker, 348 U.S. 26, 32, 75 S.Ct. 98, 99 L.Ed. 27; United States v. Twin City Power Co., 350 U.S. 222, 224, 76 S.Ct. 259, 100 L.Ed. 240. In United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209, the Court held it unnecessary to determine in that case whether or not the selection of the property there in question for condemnation could have been set aside as unauthorized by Congress if the designated officials had acted in bad faith or capriciously or arbitrarily.

■ Since the earliest cases, the Supreme Court has held consistently that there is judicial review to determine whether the taking is for a public use or purpose. Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; United States v. Gettysburg Electric Ry. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576; Cincinnati v. Vester, 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950. In the last cited case, Chief Justice Hughes said: "the question what is a public use is a judicial one." 281 U.S. at 446, 50 S.Ct. at 362.

When the Vester case was in the Court of Appeals this court said "whether the use is public or private is a judicial question." Cincinnati v. Vester, 33 F.2d 242, 244, 68 A.L.R. 831 (C.A. 6). In a more recent case, this court, speaking through Judge Martin, reaffirmed the view that the courts have power to determine whether the property is in fact taken for a public use. United States v. Certain Real Estate Lying on the South Side of Broad Street, 217 F.2d 920, 924 (C.A. 6). That case involved the right to condemn land for the U. S. Courthouse at Nashville not actually used in the construction of the project. In sustaining the right to condemn, this court held that the condemnation of the allegedly excess land fell within the discretion of the Public Works Administrator, and that the exercise of his discretion was not subject to judicial review "unless palpably arbitrary, capricious, or otherwise unlawful." 217 F.2d at 927.

■ We hold that the District Court was correct in reviewing the decision of the condemning authority to the extent of determining whether the decision was made in bad faith, and determining that the taking was for a public purpose.

■ Upon the merits of the case the District Court concluded that the condemning authority did not act in bad faith in adopting a policy of taking acreage above the high water mark where access thereto was destroyed by the taking and where the cost of providing new access would exceed the value of the land. This conclusion finds support in United States ex rel. T. V. A. v. Welch, supra, where the Supreme Court upheld the decision of the T.V.A. to condemn a large acreage not actually submerged by the Fontana Dam reservoir but a part of the watershed thereof, and which was isolated by the taking, in order to avoid the larger expense of building an access highway, holding that "the Government is not barred from making a common sense adjustment in the interest of all the public." 327 U.S. at 554, 66 S.Ct. at 719. It was in this case that Mr. Justice Reed made his oft-cited statement: "The United States is not barred from the exercise of good business judgment in its construction work." 327 U.S. at 555, 66 S.Ct. at 719 (concurring opinion).

■■ It is well-established that the federal government, in eminent domain proceedings, is not limited to precisely

the amount of property which will be physically occupied by the public. Thus, for example, in the construction of a dam and reservoir, as in the instant case, the Government is not restricted to taking the land which will be actually submerged if the additional land can be reasonably related to a public purpose. United States ex rel. T. V. A. v. Welch, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843; Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; United States v. Mischke, 285 F.2d 628 (C.A. 8); United States v. Willis, 211 F.2d 1 (C.A. 8).

Appellants urge that the acreage above the high water mark was never intended for public use, as demonstrated by the fact that it later was leased to the Girl Scouts of America, a private nonprofit corporation, and that the Girl Scouts thereafter constructed an access road at the expense of said lessee. There is no proof in the record that the property was condemned initially for the purpose and with the intent of leasing it to the Girl Scouts. To the contrary the record indicates that the decision to lease the property was made some time after the condemnation had been effected. The lease to the Girl Scouts was for a rental consideration of one dollar and is subject to revocation at the will of the Secretary of the Army, with the further reservation that the Government has the right to flood any part of the leased land as may be necessary in the operation of the project. We hold that this case does not fall within the rule that one person's property cannot be taken for the benefit of another private person without a justifying public purpose. See, e. g., Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; City of Cincinnati v. Vester, 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950; Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27; Starr v. Nashville Housing Authority, 145 F. Supp. 498 (M.D.Tenn.), affirmed, 354 U.S. 916, 77 S.Ct. 1378, 1 L.Ed.2d 1432.

Finally, we find no merit in the argument of appellants that the landowner was deprived of his property without due process of law. Where the taking is for a public purpose, the rights of the property owner are satisfied when he receives that just compensation which the Fifth Amendment requires as the price of the taking. Berman v. Parker, 348 U.S. 26, 36, 75 S.Ct. 98, 99 L.Ed. 27. The record contains a stipulation of the parties to the effect that should it be held and finally determined that the Government has the right to condemn the property, a judgment may be entered by the court fixing the value of the property at $6,500. Presumably this amount represents the fair market value of the property at the time of the taking, and therefore is the amount which appellants are entitled to be paid under the Fifth Amendment, thereby fully meeting the requirements of due process. Having been assured of full payment for the value of the land as of the date of the taking, appellants are not deprived of due process by the fact that certain other landowners were given an option to waive severance damages and retain title to land above the high water mark, or that the values of such lands have increased since the taking. All of the contentions of appellants on the question of due process have been considered by the court, and are found to be without merit.

While the guardian ad litem is to be commended for the zeal with which he has performed his duties in this case, we are of the opinion that there is material evidence to sustain the holding of the District Court that the taking of the land under the circumstances of this case was not done in bad faith on the part of the condemning authority and that the taking was for a public purpose. We hold that the trial court correctly denied appellants' application for an order setting aside the judgment on the declaration of taking and for injunctive relief.

For the foregoing reasons, the judgment of the District Court is affirmed. The case is remanded to the District Court for such further proceedings as may be found appropriate consistent with the views herein expressed.