Lane, O. J.
The statute of 1804 (Chase’s L. 395) expressly confers the estate of dower in all lands, and puts at rest all questions of this kind since its passage.
The only statute in force before, was one from Pennsylvania, adopted by the governor and judges, in 1795. Chase’s L. 187. It neither creates nor defines rights, but merely points out the mode in which dower may be assigned.
The ordinance for the government of the Northwest territory provides a rule of descents for the estates of decedents, in the course of which it employs the following language : “ Saving, in all cases, to the widow of the intestate, one-third of the real estate for life, and one-third of the personal estate; and this law, relative to descents and dower, shall remain in full force until altered by the legislature of the district.” Swan’s Stat. 42.
*The plaintiff insists that before the statute of 1804, no right of dower subsisted, except such as was created by these words ; and, as they are used in no other connection, than in respect to lands descended, it is inferred that no right of dower subsisted, except in the lands of which the intestate died seized.
If the estate of dower had no existence, except by virtue of the ordinance, it would be difficult to escape this conclusion. But there are certain institutions and rights which seem to have their foundation in the very constitution of the human race. No nation has been found so rude or uncivilized as not to have provided for itself rules which regulate the relation of marriage, those between parent and child, and the succession of decedents’ estates. And men could not subsist, either in society or in the family, unless these matters, at least, are controlled by some rule which possesses the force of law.
In all the nations of the Teutonic stock, some right of dower has been found to exist from the earliest antiquity. This right has received vai’ious modifications at different times and in different countries; but before the concessions of the great charter, it as *191 sumed in England the modern form, by which it attached to all lands of which the husband had seizin during coverture. This continues to be the law of England, and is the law in most states of the Union.
Such is the common law of dower; an institution existing wherever the common law obtained; a rule which each people has the power to change, but a conception which none could shake off without substituting some other provision in its stead. It was to a people, under the dominion of this idea, that the ordinance was addressed, and, far from assuming to prescribe a different rule, or conferring a new right, it does no more than recognize an existing institution, and takes care that it receive no prejudice by the operation of the law of descents. We can regard it as no less than an authentic acknowledgment of the estate in dower at common law, to which law we must recur to learn the signification of the term, and the extent of the dowress’ interest.
^Influenced by these views, we are readily lead to embrace the opinion that, during all periods since the organization of government in the territory, a wife was dowable of all lands within it, of which the husband was seized at any time during coverture. It follows, then, that, in this case, the condition has not occurred by which the note was to become due; and this bill, to obtain its payment by a sale of the tenements morgaged, is dismissed, with costs. Bill dismissed.