MICHAEL FISHER v. GEORGE GRAHAM.

An ordinance to grade and macadamize a street, passed by the city council under the municipal corporation act of 1852, upon the report and recommendation of the board of city improvements, was valid, although the report and recommendation were not signed by the clerk of that board.

This case was reserved for the purpose of determining the validity of an ordinance adopted by the city council, August 21, 1863, for grading and macadamizing Parker street. The objection to the ordinance is that its adoption was not recommended to the city council by the board of city improvements, and therefore the council had no power to act on the subject.

*J. Bevan, Jr.,* and *Geo. E. Pugh,* for plaintiff.

*King, Thompson & Avery,* for defendant.

TAFT, J. The question to be determined in the case, is whether the council did, in this case, order this improvement on the report and recommendation of the board of city improvements.

It appears that the board, on the 21st of August, 1863, adopted a resolution, "That the clerk prepare and transmit to the city council an ordinance to grade and macadamize Parker street, from Ohio avenue to North Elm street."

It appears that, on the same day, the city council took up the ordinance as coming from the board of city improvements, and passed it. The copy of the ordinance is in evidence as passed; it was adopted as coming from the board, and is precisely the ordinance which the board ordered the clerk to prepare and transmit to the council.

Are we to regard this ordinance as adopted without the report and recommendation of the board of city improve-

ments, or upon such report and recommendation? The proceedings of the council assume and represent that it was upon the recommendation of the board. The council did not originate the ordinance, but the board of city improvements did, as appears from the record of the proceedings of the city council in evidence. The same fact appears quite as clearly from the proceedings of the board. There is no reason to doubt that the ordinance was prepared and transmitted by the clerk as directed, and the council thus became possessed of it as shown by its proceedings. ·

But the clerk did not authenticate the ordinance by his signature. The document accompanying the proposed ordinance contained a recommendation of it, but was not signed. But the committee of the council knew from whom it came. Now, shall we presume, after all, that this ordinance was not recommended to the council?

There is nothing in this case to require the court to presume a fact involving a breach of duty on the part of the council and its committee, when the evidence is more consistent with the faithful performance of that duty.

In the opinion of the majority of the court, the effect of the evidence is that the ordinance was reported, and the recommendation was made, and on that report and recommendation the council acted. When the board directed their clerk to prepare and transmit to the council an ordinance to grade and macadamize the street, they directed him to do that which, if done, would amount to a report of the ordinance and a recommendation of its adoption. The intention to report and recommend was declared by the board in its proceedings, and as the proceedings of the board were recorded, and, by ordinance, required to be kept open to the inspection of the city council, as well as to the rest of the public, it was itself a recommendation; and if reported to the council by its clerk, and the council acted on it, the statute was substantially complied with. And when we find the council professing to act upon a recommendation which we know that the board had made,

we may safely take that profession to be true. There is no reason, that we can conceive of, for us to presume the contrary.

There is nothing in the case to induce the court to be more strict in its construction of the statute in this, than in other cases.

There is no evidence of any attempt to discard the preliminary action of the board of city improvements. That board had signified in the most unqualified manner, and in the manner which was usual, its recommendation of the improvement, and on that the council acted. The work has been done. The defendant has had the benefit of the improvement. The mere clerical omission of the clerk of the board to sign the document, transmitted probably by his own hand to the committee of the city council, is not such a substantial defect as to annul the proceedings for want of jurisdiction. The requisition of the statute was substantially complied with. It is not a condition precedent to the action of the council that the recommendation or the report shall be signed by the clerk of the board. The council are not to act "except on the report and recommendation" of the board. No form of report or recommendation is prescribed. The board by preparing and delivering the ordinance to the city council could intend nothing less than to report it and recommend its passage.

An ordinance was not void because it was not signed by the president of the council, if it were actually passed and recorded. (11 Ohio St. 101.) That was an ordinance for annexation, which was not signed by the president of the council. "Though it be true that the statute directs him to authenticate all ordinances by his signature, it does not follow that his signature is essential to its validity." (Ib. 103.)

The provision requiring that ordinances shall be authenticated by the signature of the presiding officer and clerk of the council is contained in section 100 of the municipal

code, page 34, being the same provision contained in the act of May 3, 1852, section 102, Disney's Ord. 195, 184.

There is a recognized distinction between a case like this and those cases in which private property is condemned for public use. The effect of setting aside these proceedings is to relieve the defendant from his just share of the costs of a local improvement to his property, and cast it upon the other tax payers of the city. This we are not willing to do unless upon substantial grounds. A mere clerical defect in the evidence on which the council acted, when the substantial thing existed which the statute required, does not warrant a denial of their jurisdiction in the case.

A majority of the court are of the opinion that the ordinance was valid, and that the plaintiff is entitled to a judgment for the amount of the assessment.

STORER, J., dissented, and gave the following opinion:

This case is reserved from Special Term for the opinion of the judges upon the following questions:

*First.* Was an ordinance of the city council of Cincinnati a valid exercise of power on the part of that body to authorize the improvement of a street at the expense of the adjoining land owners, unless the mode of assessment, whether it shall be by front foot or otherwise, is first prescribed?

*Second.* Is there any legal evidence in the case that the ordinance was passed by the council upon the recommendation and approval of the board of city improvements?

We need not now examine the proposition first stated, as we have determined in another case while this action has been pending, that there was a general ordinance of the council in force when the proceedings in this cause were had, which prescribed the mode of all assessments, declaring that when the price to be paid for the contemplated improvement was not specially assessed upon the

adjoining property, it nevertheless was to be regarded as assessed upon it by the front foot.

. The only question, therefore, we are now to determine is, can the city council direct a public improvement to be made, and the cost assessed upon the adjoining lot owners, unless the work has previously been recommended to be done by the board of public improvements? This involves the proper construction of the city charter, and the ordinances that are in force which confer the power upon that board and prescribe its duties.

Three commissioners, one of whom is elected annually, with the mayor of the city and the city civil engineer, constitute this board; and by section 60 of the charter (Disney, 107), it is declared, "that in all cities of the first class, where there shall be a board of city improvements, no improvement or repair in relation to streets, sewers, or bridges shall be ordered or directed by the city council, except on the report and recommendation of the said board; they shall report from time to time to the council when any such improvements and repairs are necessary or proper, and when an assessment is required and the proper amount to be assessed, and the council shall take such action thereon as may be deemed proper."

By the same statute, the city council were authorized to prescribe additional duties to be performed by the board; and on the 17th March, 1865 (Disney, 265), an ordinance was accordingly passed, defining the duties and powers of the board, which "gave them full power and control over the streets, lanes, and alleys of the city, requiring all applications for the establishment of grades or the change of grades, or the grading, paving, repairing, or improvement of the public thoroughfares, to be made to them, who were then required to investigate and determine the propriety of the proposed improvement, causing an estimate of the probable cost to be made by the city civil engineer, a copy of which shall be placed on file in their office."

They were further empowered, if no petition was pre-

sented, should they be satisfied the work is proper to be done or the improvements made, after they have caused an estimate of the cost to be calculated by the city engineer, to present the subject to the city council for their consideration. By section 5 of this ordinance the clerk of the board "is required to prepare all ordinances and resolutions which shall be submitted to the council, and his certificate should be proof of the action of the board on the subject.

It is matter of municipal history that before the establishment of the board of city improvements, the duties now devolved upon its members were performed by committees of the council, who examined the propriety of the proposed improvement and reported to the corporate body, what is now required to be done by the board of improvements. This imposed much labor upon the members of the council, who could not be expected to devote the time necessary to a minute examination of the subject when it interfered with their ordinary pursuits. Consequently, there was not unfrequently hasty legislation, which produced, unintentionally, great injury to property, and imposed heavy burdens upon its owners. This necessitated the organization of the board of city improvements, to whom was properly confided the important duty of examining, estimating, and carefully judging the work to be done; and its cost, as well as its necessity, were to be considered preparatory to the final action of the council. The introduction of this new agency into our municipal government was intended also as a check on the council, and became a virtual restraint on their ordinary powers; and while it gave this board the authority to recommend what should be done, it imposed upon it the responsibility of carefully and thoroughly investigating the subject.

The council, then, it is clear to us, should not act until they have first been informed by the board that their action is necessary, and the projected improvements proper to be made. The recommendation thus required to be made by

the charter gave jurisdiction over the subject to the council and justified them in ordering the work to be done, while it protected individuals from injudicious, if not oppressive taxation.

We suppose, in all cases like this, the action of the council is legislative and not judicial, and therefore nothing can be inferred to sustain it, but, on the contrary, every step required by the charter to confer the power must be proved. This was held in *Culbertson* v. *City of Cincinnati*, 16 Ohio, 574; *McMicken* v. *Same*, 4 Ohio St. 394.

In *Harbeck* v. *City of Toledo*, 11 Ohio St. 219, the question is fully examined by Judge Peck, who decided that the power conferred on municipal corporations to take private property for public use must be strictly followed, and when the statute giving the authority requires the publication of a notice, preparatory to the appropriation, which requirement was not complied with, the appropriation could not be sustained. He quotes, among other cases, *The State* v. *Jersey City*, 1 Dutcher, 310, and *Bonaparte* v. *Camden and Amboy Railroad*, 1 Baldwin, 229, in both of which it is said that the authority given to the corporate body must be strictly pursued, "as it is special, limited, and conditional." This decision is founded upon the assumption that the jurisdiction conferred can not be sustained by implication; it must have been first acquired before it can be legally exercised, and such also was the opinion of the court in *Adams' Lessees* v. *Jeffries*, 12 Ohio, 253, where the question was carefully investigated by Judge Lane.

The right to adjudicate must appear before the jurisdiction attaches; while it is always the privilege of the defendant to deny it, or show that it did not legally exist. We find the rule vindicated to its largest extent by Judge Bronson in *Sharp* v. *Johnson*, 4 Hill, 93, where the subject is treated with great clearness and ability; but upon so plain a question it is needless to multiply authorities.

Before the organization of the board of city improvements, there was a time in our municipal history when the consent

of a majority of the lot owners bounding on a public street was required to authorize its improvement, and it was always regarded that no power existed in the council to order the work to be done unless that provision was first complied with. Indeed, such power was never otherwise exercised, and it would seem that the recommendation of the board has been now substituted, and was intended to protect the property holder as well as to confer jurisdiction upon the council.

We have been furnished with certified copies of the proceedings of the council in the case before us, and it does not appear that the board of city improvements took the preparatory steps required by the charter, nor recommended the improvement to be made for which the defendant is assessed. On the contrary, the ordinance seems to have been passed by the sole action of the council, as if it had originally been presented on the motion of one of its members. This may have been an oversight, but the fact should substantially appear on the record that what gave jurisdiction to the council really existed, and was before that body when the ordinance was passed. This is not found in the proceedings, and can not be inferred from the passage of the ordinance.

We but state the rule that in the proceedings of any tribunal whose jurisdiction is limited, the power assumed must be shown to exist, and conclude, therefore, the ordinance before us is *ultra vires*, and the defendant can not be charged with the assessment made on his property.