CINCINNATI *v.* VESTER.

SAME *v.* RICHARDS ET AL.

SAME *v.* REAKIRT.

Nos. 372, 373, and 374.   Argued April 17, 21, 1930.—Decided May 19,
1930.

440

*Messrs. John D. Ellis,* City Solicitor of Cincinnati, and *Ed. F. Alexander,* Assistant City Solicitor, for petitioner.

*Mr. John Weld Peck,* with whom *Messrs. Milton Sayler* and *Frank H. Shaffer, Jr.,* were on the brief, for respondents.

*Messrs. Gilbert Bettman,* Attorney General of Ohio, and *L. F. Laylin,* by special leave of Court, filed a brief as *amici curiæ,* on behalf of the State of Ohio.

*Messrs. Hamilton Ward,* Attorney General of New York, and *Henry S. Manley,* Assistant Attorney General, by special leave of Court, filed a brief as *amici curiæ,* on behalf of the State of New York.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

These three cases were heard together. The suits were brought by owners of land in the City of Cincinnati to restrain the appropriation of their property by the City, upon the grounds that the taking was not in accordance with the applicable provisions of the constitution and statutes of Ohio and would constitute a deprivation of property without due process of law in violation of the Fourteenth Amendment, it being alleged that the appropriation was not for a public use. Under the law of Ohio these questions could be raised only by injunction proceedings. *P. C. C. & St. L. Railway Co.* v. *Greenville,* 69 O. S. 487, 496; *Sargent* v. *Cincinnati,* 110 O. S. 444. Decrees in favor of plaintiffs for a permanent injunction

were entered in the District Court and were affirmed by the Circuit Court of Appeals. 33 F. (2d) 242. This Court granted writs of certiorari, 280 U. S. 545.

The immediate purpose of the City of Cincinnati in the condemnation proceedings was the widening of Fifth Street, one of the principal thoroughfares of the City. A resolution of the City Council, passed July 6, 1927, declared its intention to appropriate for this purpose a strip of land 25 feet in width, adjacent to the south side of Fifth Street, and no question is raised as to the validity of the appropriation of this strip.

The controversy relates to what is known as "excess condemnation," that is, the taking of more land than is needed to be occupied by the improvement directly in contemplation. The constitution of Ohio provides (Article XVIII, Section 10):

"A municipality appropriating or otherwise acquiring property for public use may in furtherance of such public use appropriate or acquire an excess over that actually to be occupied by the improvement, and may sell such excess with such restrictions as shall be appropriate to preserve the improvement made. Bonds may be issued to supply the funds in whole or in part to pay for the . excess property so appropriated or otherwise acquired, but said bonds shall be a lien only against the property so acquired for the improvement and excess, and they shall not be a liability of the municipality nor be included in any limitation of the bonded indebtedness of such municipality prescribed by law."

In this instance, the City proposes to appropriate property in excess of that actually to be occupied by the widened street, and this excess condemnation embraces the following properties of the plaintiffs:

*The Vester property.* This is a lot, with a three story brick residence, on Broadway, a street intersecting Fifth Street. The lot is 27 feet wide by 90 feet deep running

parallel to Fifth Street. It lies 44 feet south of Fifth Street and is thus 19 feet south of the 25-foot strip taken for the street widening. No part of this property is taken for the 25-foot strip or abuts on the widened street, and the entire lot is sought to be appropriated in the proceeding for excess condemnation. Between the Vester property and the 25-foot strip is the lot of another owner.

*The Richards property.* This is a leasehold of an improved lot 23 feet wide running from Fifth Street 100 feet through to Buchanan Street, which is parallel to Fifth Street on the south. It is held by the plaintiffs, Richards, with privilege of purchase. The north 25 feet of this lot is taken as a part of the strip for the widened street, and the remaining 75 feet to Buchanan Street is sought to be taken in excess condemnation.

*The Reakirt property.* This is a tract at the corner of Fifth Street and Sycamore Street (an intersecting street), 138 feet on the south side of Fifth Street and 149 feet on the west side of Sycamore Street. The tract, which is vacant except for a small gasoline filling station, embraces several lots, two of which are not contiguous to the 25-foot strip.

Among the statutory provisions of Ohio relating to the condemnation of property by municipal corporations is the following with respect to the declaration of the purpose of the appropriation (General Code of Ohio, Section 3679):

"Sec. 3679. Resolution shall be passed. When it is deemed necessary to appropriate property, council shall pass a resolution, declaring such intent, defining the purpose of the appropriation, setting forth a pertinent description of the land, and the estate or interest therein desired to be appropriated. For waterworks purposes and for the purpose of creating reservoirs to provide for a

supply of water, the council may appropriate such property as it may determine to be necessary."

The excess condemnation of the properties in question is proposed by the resolution adopted by the City Council, but the purpose of the appropriation is stated in the resolution only in the most general terms as being "in furtherance of the said widening of Fifth Street" and "necessary for the complete enjoyment and preservation of said public use." The ordinance providing for the excess appropriation was not more specific, declaring simply that it is "in furtherance of the public use," described as the widening of Fifth Street, and "for the more complete enjoyment and preservation of the benefits to accrue from said public use." In what way the excess condemnation of these properties was in furtherance of the widening of the street, and why it was necessary for the complete enjoyment and preservation of the public use of the widened street are not stated and are thus left to surmise.

The plaintiffs alleged in their bills of complaint that the excess condemnation is "a mere speculation upon an anticipated increase in the value of the properties adjacent to said improvement," and that the properties were taken "with the design of reselling the same at a profit to private individuals to be used for private purposes, and no use of said property by or for the public is intended or contemplated." The answers of the City denied these allegations and summed up the position of the City by saying that the application of the principle of excess condemnation in these cases would enable the City (1) "to further the appropriate development of the south side of Fifth Street" by using or disposing of the excess properties in tracts "with such size and with such restrictions as will inure to the public advantage," and (2) that the increase in value of the properties in question which may accrue by reason of the improvement contemplated by the

City "will pay in part the very heavy expense to which the City will be put in effecting the improvement."

On the hearing in the District Court, the plaintiffs and the defendant introduced evidence as to the condition and the value of plaintiffs' properties. There was also a stipulation of evidence as to the amount of money available for the street widening, the expense of the appropriation of the 25-foot strip, and the total expense of the entire proposed appropriation. The stipulation gave a general description of Fifth Street and of the improvements of the squares adjoining the widened street. None of the evidence defined in any specific manner the purpose of the excess condemnation.

The City argues that in resorting to excess condemnation legislative bodies generally have had in view the following three purposes (1) the avoidance of remnant lots, (2) the preservation and amplification of the improvement, and (3) the recoupment of expense from increased values. Both the District Court and the Circuit Court of Appeals concluded that the theory of remnants, and of the protection and preservation of the improvement, were not applicable to the present cases. Both courts considered that the sole purpose of the City was the recoupment by the resale of the properties in question of a large part of the expense of the street widening. In this view, both courts held that the excess condemnation was in violation of the constitutional rights of the plaintiffs upon the ground that it was not a taking for a public use "within the meaning of that term as it heretofore has been held to justify the taking of private property." The Circuit Court of Appeals added that the provision of the constitution of Ohio relating to excess condemnation, *supra,* "would seem to mean in furtherance of the normal use to which the property that is occupied by the improvement is devoted,—here the use and preservation of the street for the purposes of travel,"

and the court held that if the provision means that property may be taken "for the purpose of selling it at a profit and paying for the improvement it is clearly invalid."

In this Court, the City challenges the propriety of the assumption upon which these rulings below were based, that is, that the City was proceeding on the theory of the recoupment of expense by resale of the properties. While contending that this would be a valid purpose under the constitution of Ohio, and would constitute a taking for public use and therefore would be consistent with the Fourteenth Amendment, the City insists that its purpose in the present cases can not thus be delimited. The City calls attention to the general statements in the resolution and ordinance adopted by the City Council and declares that these broad declarations constitute "practically all the evidence which directly shows the purpose of the city." While reference is made to what is said in its pleadings with respect to its position, the argument for the City adds that "obviously an impersonality such as a city cannot very well testify as to what its plans and hopes are." The Court is asked to take judicial notice of certain desirable objects which the City might have in view. The City urges that, when the improvement is completed, the City Council will doubtless be in a position to determine what sized tracts and what kinds of restriction will be best suited for the harmonious development of the south side of Fifth Street. But the City also insists that it may never resell the excess; that it is not compelled to do so by the constitution; that the question is one to be determined in the future; that recoupment can come only from a sale, and that until by some act the City evidences an intent to sell it cannot be said to be proceeding only on a theory of recoupment. The City says that it may preserve the public use in many ways, and that sale with restrictions is one that may hereafter be

chosen, but that there is no warrant upon this record for discarding every possible use in favor of a use by sale that may, among other things, result in a possible recoupment·

We are thus asked to sustain the excess appropriation in these cases upon the bare statements of the resolution and ordinance of the City Council, by considering hypothetically every possible, but undefined, use to which the City may put these properties, and by determining that such use will not be repugnant to the rights secured to the property owners by the Fourteenth Amendment. We are thus either to assume that whatever the City, entirely uncontrolled by any specific statement of its purpose, may decide to do with the properties appropriated, will be valid under both the state and Federal constitutions, or to set up some hypothesis as to use and decide for or against the taking accordingly, although the assumption may be found to be foreign to the actual purpose of the appropriation as ultimately disclosed and the appropriation may thus be sustained or defeated through a misconception of fact.

It is well established that in considering the application of the Fourteenth Amendment to cases of expropriation of private property, the question what is a public use is a judicial one. In deciding such a question, the Court has appropriate regard to the diversity of local conditions and considers with great respect legislative declarations and in particular the judgments of state courts as to the uses considered to be public in the light of local exigencies. But the question remains a judicial one which this Court must decide in performing its duty of enforcing the provisions of the Federal Constitution.[1] In the present in-

---

[1] *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 159; *Missouri Pacific Ry. Co.* v. *Nebraska,* 164 U. S. 403, 417; *Madisonville Traction Co.* v. *Saint Bernard Mining Co.,* 196 U. S. 239, 252; *Clark*

stance, we have no legislative declaration, apart from the statement of the City Council, and no judgment of the state court as to the particular matter before us. Under the provision of the constitution of Ohio for excess condemnation when a city acquires property for public use, it would seem to be clear that a mere statement by the council that the excess condemnation is in furtherance of such use would not be conclusive. Otherwise, the taking of any land in excess condemnation, although in reality wholly unrelated to the immediate improvement, would be sustained on a bare recital. This would be to treat the constitutional provision as giving such a sweeping authority to municipalities as to make nugatory the express condition upon which the authority is granted.

To the end that the taking shall be shown to be within its authority, the municipality is called upon to specify definitely the purpose of the appropriation. This is the clear import of the provision of the Ohio statute (Ohio General Code, sec. 3679, *supra*) that the City Council, when it is deemed necessary to appropriate property, shall pass a resolution " defining the purpose of the appropriation." It can not be said that this legislative requirement relates only to the principal appropriation and not to the excess appropriation. It must be deemed to apply, according to its express terms, to every appropriation of private property by a municipality. The importance of the definition of purpose would be even greater in the case of taking property not directly to be occupied by a proposed public improvement than in the case of the latter which might more clearly speak for itself.

v. *Nash*, 198 U. S. 361, 369; *Strickley* v. *Highland Boy Mining Co.*, 200 U. S. 527, 531; *Hairston* v. *Danville & Western Ry. Co.*, 208 U. S. 598, 606; *Sears* v. *City of Akron*, 246 U. S. 242, 251; *Rindge Company* v. *County of Los Angeles*, 262 U. S. 700, 705; *Old Dominion Land Co.* v. *United States*, 269 U. S. 55, 66.

The general declaration of the resolution of the City Council, and of the ordinance if that may be read with the resolution, for the excess condemnation in the present cases, is plainly not a definition. To define is to limit, and that which is left unlimited, and is to be determined only by such future action as the City may hereafter decide upon, is not defined. The City's contention is so broad that it defeats itself. It is not enough that property may be devoted hereafter to a public use for which there could have been an appropriate condemnation. Under the guise of an excess condemnation pursuant to the authority of the constitutional provision of Ohio, private property could not be taken for some independent and undisclosed public use. Either no definition of purpose is required in the case of excess condemnation, a view of the statute which cannot be entertained, or the purpose of the excess condemnation must be suitably defined. In this view, in the absence of such a definition, the appropriation must fail by reason of non-compliance with statutory authority.

We understand it to be the rule in Ohio, as elsewhere, that the power conferred upon a municipal corporation to take private property for public use must be strictly followed. *Harbeck* v. *Toledo,* 11 Ohio St. 219, 222, 223; *Grant* v. *Village of Hyde Park,* 67 Ohio St. 166, 172, 173; *Farber* v. *Toledo,* 104 Ohio St. 196, 200; *Roosevelt Hotel Building Company* v. *Cleveland,* 25 Ohio App. 53, 63, 64. The validity of the excess condemnation upon the ground of non-compliance with the state law was challenged in the bills of complaint in these suits. The respondents have made the same contention here. The City has not met it by referring us to any decision of the courts of Ohio construing the statute involved or sustaining the excess appropriation in the absence of a definition of purpose. It is an established principle governing the exercise of the jurisdiction of this Court, that it will not decide im-

portant constitutional questions unnecessarily or hypothetically. *Liverpool, New York & Philadelphia Steamship Company* v. *Commissioners of Emigration,* 113 U. S. 33, 39; *Siler* v. *Louisville & Nashville Railroad Company,* 213 U. S. 175, 191, 193; *United States* v. *Delaware & Hudson Company,* 213 U. S. 366, 407. The present cases call for the application of this principle. Questions relating to the constitutional validity of an excess condemnation should not be determined upon conjecture as to the contemplated purpose, the object of the excess appropriation not being set forth as required by the local law.

We conclude that the proceedings for excess condemnation of the properties involved in these suits were not taken in conformity with the applicable law of the State, and in affirming the decrees below upon this ground we refrain from expressing an opinion upon the other questions that have been argued.

*Decrees. affirmed.*