THE STATE, EX REL. DILLE LABORATORIES CORP., *v.* WODITSCH, DIR.

(No. 2462—Decided July 11, 1958.)

*Messrs. Nolan, Boesch & Wolff,* for relator.

*Mr. Herbert S. Beane,* city attorney, and *Mr. Maurice J. Gilbert,* for respondent.

CRAWFORD, J. This is an action in mandamus originating in this court. Relator seeks a writ compelling the issuance of a building permit for the erection of a building upon its premises within the city of Dayton. Respondent, who is the duly authorized agent of the city in all such matters, refuses the permit for the sole reason that the premises will probably be required in the relocation of U. S. highway No. 25. The amended answer alleges that the question of the public need for relator's premises cannot be determined until after the alignment plan for the portion of the project here involved has been received from an engineering firm. The city has hopes but no assurance of receiving the plan within two or three weeks.

All these facts have been stipulated (or admitted or undenied), as have also the provisions of the Charter of the City of Dayton.

Respondent points out that the appropriation procedure to be followed by the city is prescribed by this charter and not

by the general statutes. *State, ex rel. Bruestle, City Solr.,* v. *Rich, Mayor,* 159 Ohio St., 13, 110 N. E. (2d), 778.

Sections 142 to 146, inclusive, of the charter prescribe the steps to be followed in the appropriation of private property for public use. Section 142 begins with this sentence:

"Property within the corporate limits of the city may be appropriated for any public or municipal purpose, and to the full extent of the authority granted by the Constitution of the state, *such appropriation shall be made as herein provided.*" (Emphasis added.)

In the case of *City of Cincinnati* v. *Vester,* 281 U. S., 439, at page 448, 74 L. Ed., 950, 50 S. Ct., 360, the Supreme Court of the United States said:

"We understand it to be the rule in Ohio, as elsewhere, that the power conferred upon a municipal corporation to take private property for public use must be strictly followed. *Harbeck* v. *City of Toledo,* 11 Ohio St., 219, 222, 223; *Grant* v. *Village of Hyde Park,* 67 Ohio St., 166, 172, 173; *Farber* v. *City of Toledo,* 104 Ohio St., 196, 200; *Roosevelt Hotel Bldg. Co.* v. *City of Cleveland,* 25 Ohio App., 53, 63, 64."

As provided in the charter and outlined by respondent's counsel in argument, the following steps are required for appropriation: (1) a resolution by the city commission declaring its intent; (2) the giving of written notice thereof to the owner in the manner prescribed; (3) passage of an ordinance by the commission ordering the purchase at an agreed price, or (4) if the commission is unable to agree with the owner upon the purchase price, the passage of an ordinance directing the appropriation to proceed; and (5) application by the city attorney to the Court of Common Pleas or Probate Court, followed by (6) subsequent procedures in accordance with general law.

Thus far only the first two of these steps have been taken. Hence the city has not yet acquired the property and can exercise no proprietary rights therein. The relator is still the owner and as such is entitled to use and improve its property in any lawful manner it may see fit. Denial of a building permit for the sole reason that the city may later appropriate is an unauthorized present interference with relator's rights of ownership.

Considerable argument has been devoted to the cases of *Henle* v. *City of Euclid,* 97 Ohio App., 258, 125 N. E. (2d), 355, and *State, ex rel. Sun Oil Co.,* v. *City of Euclid,* 164 Ohio St., 265, 130 N. E. (2d), 336. However the applicable appropriation procedures and status of the public project in those cases may differ from the present situation, still the principles enunciated there have significance here. In the latter case the Supreme Court said (pp. 271, 272):

"\* \* \* The municipality has no power or authority to appropriate lands for some contemplated future use. *City of Cincinnati* v. *Vester,* 281 U. S., 439, 448, 74 L. Ed., 950, 50 S. Ct., 360.

"The Court of Appeals in the course of its opinion in the *Henle case* said:

" 'The claim that the city has the right to "freeze" plaintiff's property, preventing her from its beneficial use until the city gets around to appropriating it for public purposes as a part of the Lakeland Freeway, is without foundation. If the city needs the property in that development, then an immediate proceeding in eminent domain would end this lawsuit. All that has been done so far toward building the Lakeland Freeway is tentative in character. The proceeding looking to the construction of the freeway has not reached a stage compelling the city to appropriate the property, nor is the plaintiff compelled to stand by, paying taxes without benefit, until the development reaches a stage, if it ever does, where her property must be taken for freeway purposes. Section 713.14, Revised Code.'

"With this statement of the law we concur, and it is equally applicable to the facts and issues in this case."

Respondent argues that significant strides have already been taken toward performance of this public project. This fact does not constitute an appropriation of relator's property.

It is argued further that by virtue of Sections 719.21 and 2709.46, Revised Code, the city might, even after assessment of compensation, decline to take the property; that is to say, that it might then relinquish the rights it had acquired. Such subsequent possibility does not avoid the necessity of its first acquiring rights in the property before exercising dominion over it.

We can readily appreciate the difficulties confronting both the city and the relator. The location of the project has already been the subject of prolonged public debate; and the city must deal with other governmental agencies, both state and federal, as well as with engineers and others, in completing its plans and embarking upon final action.

Relator, on the other hand, can hardly be expected to refrain indefinitely from embarking upon its plans until others complete theirs.

As we understand the plans of the relator, they contemplate the razing of present buildings. It is entirely possible that these would be demolished and new construction not yet substantially begun, when the city might appropriate, to relator's serious loss.

Hence, there are hazards on both sides. But such circumstances cannot affect the present legal rights of the parties which we are called upon to determine.

If no appropriation were contemplated, relator would unquestionably be entitled to a writ, if indeed a building permit were then refused. He cannot be denied the writ because of a possible future appropriation which has not yet occurred and may never occur.

The city not having appropriated the property, and the application for a building permit being admittedly in due form, relator cannot be denied its rights of ownership by withholding the permit.

The writ is granted.

*Writ allowed.*

HORNBECK, P. J., and WISEMAN, J., concur.