**OMYA, INC., Plaintiff,**

v.

**State of VERMONT, Vermont Environmental Board, et al., Defendants.**

**No. 2:99–CV–180.**

United States District Court, D. Vermont.

Jan. 21, 2000.

Peter Welles Hall, Reiber, Kenlan, Schwiebert, Hall & Facey, Edward Vanderveer Schwiebert, Reiber, Kenlan, Schwiebert, Hall & Facey, Rutland, VT, for OMYA, Inc., plaintiff.

Mark J. Di Stefano, Vermont Attorney General's Office, Montpelier, VT, for State of Vermont, Vermont Environmental Bd., John T. Ewing, John Drake, Samuel Lloyd, Rebecca M. Nawrath, Alice N. Olenick, W. William Martinez and Arthur Gibb, defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

In this action for injunctive and declaratory relief, Plaintiff OMYA, Inc. ("OMYA") claims that the Vermont Environmental Board's decision to limit OMYA's use of U.S. Route 7 for tractor trailer transport of their product violates a variety of federal constitutional provisions. Specifically, OMYA claims that such limitations on commerce and the use of highways based on reasons unrelated to public health and safety violates the Supremacy, Commerce, Equal Protection, and Due Process Clauses of the Constitution of the United States, as well as federal law relating to the use of highways. Defendants, the State of Vermont, *et al.*, filed a Motion to Dismiss, claiming that this Court lacks subject matter jurisdiction, and that this Court is further required dismiss this case pursuant to *Younger* doctrine, or, in the alternative, stay its hand pursuant to *Pullman* abstention doctrine. For the reasons that follow, the Court DENIES the Defendant's Motion to Dismiss (paper 5), but determines that it must abstain from consideration of the case until issues arising under Vermont law have been resolved by the courts of the State.

### Factual Background

Plaintiff OMYA is a Vermont corporation which owns a calcium carbonate ore quarry in Middlebury, Vermont. OMYA's tractor trailer trucks transport the ore from the quarry to its processing plant in Pittsford, Vermont, by way of U.S. Route 7, the major north-south highway in the western part of the state. OMYA's processed ore is sold throughout the United States and in Canada. Another quarry from which OMYA retrieved calcium carbonate, the Smokerise Quarry, is no longer in operation. The stockpiled material at that quarry was removed by the end of September 1999.

OMYA's commercial activities at both locations are regulated by Vermont's Land Use and Development Law, 10 V.S.A. §§ 6001–6108 ("Act 250"). In 1977, an Act 250 permit (No. 1R0271) was issued by the District 1 Environmental Commission to OMYA for the operation of the Pittsford Processing Plant. The District 9 Environmental Commission issued an Act 250 permit (No. 9A0107) ("Middlebury Quarry permit") to OMYA for the operation of the Middlebury Quarry in 1981.

On or about May 27, 1997, OMYA filed an application with the District 9 Environmental Commission to amend the Middlebury Quarry permit, to allow for the construction of an access road from the Middlebury Quarry to U.S. Route 7. This application also requested an increase in the number of round trip truck trips permitted by the Commission. In November of that same year, permit No. 9A0107–3 was granted, permitting the construction of the direct access to U.S. Route 7. The District 9 Environmental Commission then issued Act 250 permit No. 9A0107–2, which limited the number of OMYA's tractor trailer truck round trips ("truck trips") along Route 7 to 113 per day.

OMYA appealed this decision to the Vermont Environmental Board ("the Board"), stating that OMYA tractor trailers would need to make up to 170 round trips per day in order to meet processing capacity and anticipated customer demand. Following a hearing, the Board issued an Amended Land Use Permit (No. 9A0107–2–EB) on May 25, 1999, which increased the number of truck trips by 2 to 115 per day. This order, which declined to further expand OMYA's use of Route 7, was based on reasons unrelated to public health and safety. The Board noted in its order:

> Based upon the findings of fact, the Innkeepers have failed to persuade [us] that any level of increased truck traffic through Brandon will result in unsafe conditions. OMYA's trucks drive at or below the speed limit, stop for pedestrians in cross walks, and have an outstanding safety record.

OMYA instituted the present action on June 23, 1999, by filing its complaint for declaratory and injunctive relief against the Vermont Environmental Board and its members. The complaint alleges that the limitation of the number of round trips on the highway violates federal preemption doctrine and the Supremacy Clause, the Commerce Clause, the Equal Protection Clause, and the Due Process Clause of the United States Constitution.

On the following day, June 24, 1999, OMYA filed a notice of appeal of the Environmental Board's decision to the Vermont Supreme Court. On or about June 28, 1999 OMYA filed a Notice of Reservation of Federal Claims with the Vermont Supreme Court in connection with its appeal.

### Discussion

Defendants argue that this Court should abstain from deciding this case pursuant to both *Pullman* and *Younger* abstention doctrines, and also argue that the plaintiffs lack standing to sue. In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(1), the allegations of the complaint are to be construed favorably to the pleader. The complaint is viewed liberally and the court accepts as true all uncontroverted material facts alleged in the complaint. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1350, 1363 (1990). The issue is not whether claimants will ultimately prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). For the purposes of this motion to dismiss, therefore, the Court accepts OMYA's factual allegations as true.

### A. *Standing*

■ In order to establish standing, the plaintiff must establish at an "irreducible minimum" (1) an actual or imminent injury in fact, (2) causal connection between the injury and the conduct complained of, and (3) likelihood that the injury will be redressed by a favorable decision. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 1016–1017, 140 L.Ed.2d 210 (1998); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Albanese v. FEC,* 884 F.Supp. 685, 691 (E.D.N.Y.1995), *aff'd,* 78 F.3d 66 (2d Cir.1996), *cert. denied,* 519 U.S. 819, 117 S.Ct. 73, 136 L.Ed.2d 33

(1996). The burden of establishing standing falls on the party invoking jurisdiction. 504 U.S. at 561, 112 S.Ct. 2130.

■ The state first argues that Plaintiff has not shown actual or imminent injury, because enforcement based on the permit has not been threatened. However, in *Craig v. Boren*, 429 U.S. 190, 194, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the Supreme Court found that plaintiffs have standing when they are "obliged either to heed the statutory discrimination, thereby incurring a direct economic injury, or to disobey the statutory command and risk [...] sanctions and perhaps loss of license." Furthermore, in cases where the permit conditions apply directly to the plaintiff, "there is ordinarily little question that the action or inaction has caused injury and that a judgment preventing it or requiring the action will redress it." 504 U.S. at 561–562, 112 S.Ct. 2130. Therefore, it is clear that OMYA faces an imminent injury in fact as the permit conditions apply directly to OMYA, and it must either comply with the conditions or face the imposition of fines and penalties by the State of Vermont.

*Lujan* requires a direct causal connection between the injury and the conduct complained of. 504 U.S. at 561–62, 112 S.Ct. 2130. The causal connection between restriction on the number of truck trips on Route 7 and OMYA's inability to make more trips than are allowed is, clearly, direct.

Finally, *Lujan* requires redressability through judicial intervention. *Id.* The removal of the limitation on the number of truck trips will allow OMYA to transport additional calcium carbonate from Middlebury Quarry to its processing plant, thereby redressing the economic harm to OMYA. Thus, in light of the facts construed most favorably to OMYA, standing requirements have been met for purposes of this motion.

**B. *Younger Abstention***

■ As this Court reiterated in *Barker v. Ripley*, 921 F.Supp. 1213 (D.Vt.1996), abstention analysis " 'begins with the principle that federal courts have a 'virtually unflagging obligation' to exercise jurisdiction over all cases properly before them.' " (citations omitted). However, in cases involving a pending state prosecution, declaratory action, or coercive administrative proceeding, federal cases which attempt to interfere with the ongoing state proceeding must be dismissed. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Ohio Civil Rights Com'n v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). *Younger* doctrine grew out of a "longstanding public policy against federal court interference with state court proceedings." 401 U.S. at 43, 91 S.Ct. 746.

■ When the state proceeding is civil rather than criminal, the action must be "in aid of or closely related to" criminal statutes, the state must be a party, and an important state enforcement policy must be at stake for *Younger* to apply. *Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). In finding that *Younger* could apply in cases involving administrative proceedings, the Supreme Court devised a three part test for determining whether *Younger* abstention is appropriate: 1) was there an ongoing state judicial proceeding; 2) did the proceedings implicate important state interests; and 3) was there an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex County Ethics Committee v. Garden State Bar Ass'n* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

■ It is important to note that the *Younger* line of cases uniformly involves state actions brought by the state against the federal plaintiff. See, e.g., *Middlesex*

*Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (federal court will not step in when state sues in state court to enjoin operation of theater showing obscene films); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (federal court will not interfere with state court contempt process); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (federal court will not hear action challenging state's right to sue to recover fraudulently obtained welfare payments); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (no federal action allowed when state's child custody proceeding is pending); *Barker v. Ripley,* 921 F.Supp. 1213 (D.Vt.1996) (landfill operators precluded from bringing declaratory action seeking to enjoin state administrative enforcement action).

A notably different procedural posture presents itself in this case. Here, OMYA has brought suit in state court challenging the legality of the permit restrictions placed on it by the Environmental Board. Defendants have admitted that there is no pending threat of prosecution or enforcement in this case. The *Younger* line of cases is solely concerned with preventing Defendants in state court from circumventing state prosecution or enforcement by way of federal judicial intervention. This Court declines to extend *Younger* to cases that involve proceedings in state court which were initiated by the federal Plaintiff.

## C. *Pullman Abstention*

■ Generally, federal courts should avoid making unnecessary constitutional decisions. *City of Cincinnati v. Vester,* 281 U.S. 439, 448–449, 50 S.Ct. 360, 74 L.Ed. 950, (1930). The Second Circuit has determined that *Pullman* doctrine is triggered when: "[f]irst, the state statute

must be unclear or the issue of state law uncertain; second, resolution of the federal issue must depend upon the interpretation given to the ambiguous state provision; and third, the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue." *United Fence and Guard Rail Corp. v. Cuomo,* 878 F.2d 588, 594 (2d Cir.1989). When *Pullman* applies, the federal court must stay its hand on the federal question until the state law question is resolved by highest state court. *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Harris County Com'rs Court v. Moore,* 420 U.S. 77, 84, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973).

■ In the present case, issues of state law are unclear for *Pullman* purposes. First, OMYA has raised both a state law challenge to the Board's jurisdiction over truck traffic and a state law claim that the Board is otherwise required to void the truck traffic permit condition as a matter of collateral estoppel. Second, OMYA challenges the Board's application of Act 250 to the truck traffic issue. Given that these issues are currently pending before the Vermont Supreme Court, there are ambiguous state law issues present in this case, and the first prong of the *United Fence* case is fulfilled.

Next this Court must determine whether resolution of the federal issue depends upon the interpretation given to the ambiguous state provision. The basis of this case is the existence the permit conditions placed on OMYA. OMYA's jurisdictional and merits challenges in state court call into question the continued viability of the permit restrictions. Resolution of the federal questions is predicated on the existence of the permit; a favorable determination of the state issues for OMYA will make this Court's findings unnecessary. In light of this procedural posture, *Pullman*'s concern for judicial economy would be flouted by a determination of the feder-

al issues by this Court at this stage. Thus, the second prong of the *United Fence* test is met.

Finally, this Court must discern whether the state law is susceptible of an interpretation that would avoid or modify the federal constitutional issue. OMYA itself has argued to the Environmental Board that the federal constitutional issues at hand need not be resolved in order for it to receive a favorable outcome.

OMYA has exerted a relatively rare request: that the Environmental Board directly consider the provision of the Constitutions of the United States and of the State of Vermont in its determinations. [...] But the Board does not need to go that far. [...] OMYA is confident that, when carefully considered and properly weighed, the evidence leads directly to the conclusion that the proposal by OMYA, and specifically the proposal in increase in [sic] truck transport of ore from the Middlebury Quarry to the processing plant in Pittsford, if conducted in accordance with the findings proposed by OMYA, will be in conformance with all the requirements of [Act 250] and will not cause or result in any detriments to public health, safety, or general welfare.

Hasen Affidavit. OMYA has filed an appeal with the Vermont Supreme Court challenging the limitations placed on the number of truck trips. On the most basic level, the success of this appeal would render the federal claims in district court moot. Thus, the third and final prong of the *United Fence* test is also satisfied, barring this Court from hearing the federal issues until the Vermont Supreme Court has received a full opportunity to review the state law issues.

The Supreme Court, in *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), held that parties returned to state court under *Pullman* can have their federal claims heard in federal court through reservation of those claims in the state

pleadings. Plaintiff's complaint before this Court addresses, *inter alia*, critical issues regarding the interplay between Vermont's regulation of the highways and the core protections provided by the Interstate Commerce Clause. In the event that these federal claims are not rendered moot through resolution on state law grounds by the Vermont Supreme Court, OMYA's *England* reservation assures its eligibility to re-raise its federal claims in a federal forum at the close of full state adjudication.

### D.  *Federal Preemption*

Finally, OMYA argues that abstention doctrines cannot apply in this case, as the regulation of the National Highway System for the transportation of goods in interstate commerce is both expressly and implicitly preempted by the Federal government. However, federal preemption is not triggered by each and every assertion of a substantial constitutional challenge to state action. State law is preempted by federal law only when 1) a federal statute expressly preempts state action, 2) state law is in direct conflict with federal law, or 3) federal regulation is pervasive in the field. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citations omitted).

The federal statute at issue in this case is not unlimited in its preemptive scope. The rights of the states to regulate the use of the National Highway system have been curtailed by a number of congressional enactments. Most notably, the Carmack Amendment to the Interstate Commerce Act of February 4, 1887 served as the first comprehensive set of statutes which specified that federal law controlled liability for goods lost or damaged in interstate shipment by common carriers. However, Congress itself limited the scope of its preemptive power in this field through the language of 49 U.S.C. § 14501(c): "[...] A State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law,

regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier [ . . . ] or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). OMYA admits that it does not qualify as a motor carrier for purposes of this statute. Therefore, the statute does not explicitly preempt state action in this field with respect to OMYA.

The second part of the *Cipollone* test, whether state law in direct conflict with federal law, is addressed by neither party. As the court finds no evidence of such a conflict, this part of the test is not met.

Finally, OMYA asserts that preemption is triggered by pervasive federal regulation in the field of the National Highway system. The national highways, however, are not the domain of exclusive federal control. It is clear from the language of 49 U.S.C. § 14501(c)(1) that Congress intended to limit the scope of federal regulation of the national highways, by qualifying the specific types of transport activities which are within federal domain. Thus, federal regulation of the National Highways is by no means absolute.

The conditions for determining federal preemption of the field have not been met. As the state regulation in this case does not run afoul the specifications set forth in *Cipollone,* this Court is permitted to stay its hand until the state issues have been fully resolved in state court.

### Conclusion

WHEREFORE, pursuant to the mandates of *Pullman* abstention, this Court ORDERS that this case is stayed pending resolution of the state case.