OPINION
{¶ 1} Plaintiff-appellant the City of Springfield, Ohio, appeals from a judgment of the Clark County Court of Common Pleas dismissing an action to appropriate the property of defendants-appellees Donald and Carol Gross. The City of Springfield contends that the trial court erred in finding that the Springfield City Commission abused its discretion in determining the amount of the Grosses' property needed by the City to construct a sewer lift station.
 {¶ 2} We conclude from the record that the City does not intend to use the entire 0.677 acres of the Grosses' property for the stated public purpose, a replacement sewer lift station, because the record shows that the City intends to use a portion of the property to store construction vehicles, equipment, and materials during construction of the replacement sewer lift station and to build another replacement sewer lift station in twenty to twenty-five years. Thus, the City is seeking excess property over what is actually necessary as a site for the improvement recited as the purpose for the appropriation. Because the ordinance passed by the City Commission stated that the purpose of the appropriation was to install a replacement sewer lift station, we conclude that the City has failed to define specifically in its legislation the purpose of the excess appropriation in accordance with City of Cincinnati v. Vester,281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950 and City of East Cleveland v.Nau (1931), 124 Ohio St. 433, 179 N.E. 187. We conclude that the City's failure to define the purpose of the excess appropriation in definite and specific terms is fatal to the appropriation, so that the trial court properly dismissed the action.
 {¶ 3} Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} In May, 2002, the City Commission of the City of Springfield passed Ordinance No. 02-210, giving written notice to Donald and Carol Gross that the City Commission found it necessary to appropriate 0.677 acres of real property (hereinafter Tract 1) owned by the Grosses to install a replacement sewer lift station. Tract 1 is bounded on the north by State Route 41, on the south by West First Street, on the east by property owned by Dr. Vicki Zunic, and on the west by a drainage ditch and the City's existing sewer lift station. The Grosses own another 0.950 acres of land to the west of the drainage ditch.
 {¶ 5} In August, 2002, the City Commission passed Ordinance No. 02-329, directing the Director of Law to file a complaint for appropriation to assess the compensation to be paid for the property. The City Commission had determined that the value of the property to be appropriated was $5,500, and found that an agreement was unable to be reached with the Grosses. In September, 2002, the City of Springfield filed a petition for appropriation, seeking an order from the trial court directing the appropriation and an assessment of the compensation to be paid for the interest appropriated. The Grosses filed a motion to dismiss. The trial court held a hearing in which Timothy Gothard, City Engineer of the City of Springfield, testified.
 {¶ 6} Gothard testified that the City's purpose in seeking the appropriation was to replace the existing deteriorated sewer lift station. The existing sewer lift station is located to the west of Tract 1 and is on 0.160 acres of land. Gothard testified that the replacement sewer lift station would need to be larger than the existing sewer lift station, because it would be required to service an expanded area. Gothard also testified that the larger tract of land is necessary to provide the contractor with flexibility to avoid bedrock on the site in choosing the exact location to build, and is also necessary to store construction vehicles, equipment, and materials during construction of the sewer lift station. Gothard testified that a site having the possibility of expansion is necessary, because the City will have to build another replacement sewer lift station in twenty to twenty-five years. Gothard testified that each sewer lift station would need to be built on Tract 1 because that is where the City's gravity sewer lines and force main sewer line intersect, and the existing sewer lift station will need to be kept in operation while the new sewer lift station is being constructed.
 {¶ 7} Gothard testified that the City would use the design-build method for the design and construction of the new sewer lift station. Gothard testified that the design-build method varies from the traditional method where the City designs the project and then solicits bids from contractors to build the design. Gothard testified that the design-build method consists of the City acquiring real estate, determining a scope of work, and then soliciting bids for the project that include the design as part of the bid. The City would then review the bids, accept the lowest and best bid, and enter into a contract with the contractor.
 {¶ 8} After the hearing, the trial court granted the motion to dismiss, finding that the City Commission abused its discretion in passing an ordinance requiring the taking of private land without making "a sufficient study necessary to develop a plan showing what amount of the Defendants' property would be necessary to achieve the public purpose." From the judgment of the trial court dismissing the action, the City of Springfield appeals.
 II {¶ 9} The City of Springfield's sole assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S CITY COMMISSION ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT OF LAND NEEDED BY APPELLANT FOR ITS SEWER LIFT STATION PURPOSES AND IN DISMISSING APPELLANT'S APPROPRIATION ACTION."
 {¶ 11} The City of Springfield contends that the trial court erred in finding that the City Commission abused its discretion in determining the amount of the Grosses' property needed by the City to construct a sewer lift station.
 {¶ 12} Municipalities are allowed to appropriate private land for public use, but this power is not absolute and can be exerted only when procedures set forth in relevant statutes are strictly followed. See SunOil Co. v. City of Euclid (1955), 164 Ohio St. 265, 271, 58 O.O. 25,130 N.E.2d 336; City of Mentor v. Osborne (2001), 143 Ohio App.3d 439,445, 758 N.E.2d 252. "Generally, `[t]he decision of a legislative body to appropriate a particular piece of property is afforded great deference by courts because it is presumed that the legislative body is familiar with local conditions and best knows community needs.'" Osborne, at 445, internal citations omitted. "[W]here the appropriating agency has passed a resolution of necessity for the appropriation, the resolution is prima facie evidence of such necessity in the absence of proof showing fraud, bad faith, or abuse of discretion by the agency. When that occurs * * *, the burden is on the property owner to establish that there is no necessity." Id. at 446, internal citations omitted. "An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable." Id., citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 13} The City contends that "the real controversy between the parties is whether Appellant must generate completed construction plans before appropriating a site for a public improvement and whether Appellant's City Commission abused its discretion in determining the necessity to acquire the subject 2/3 acre to meet its sewer lift station." The City contends that Ohio municipalities may use the design-build method to develop public improvement projects, and that the trial court erred in effectively denying the City the use of the design-build method by requiring the City to have completed construction plans prior to the project site being appropriated. The City also contends that the City Commission did not abuse its discretion in determining that it is necessary to appropriate Tract 1 for the City's present and future sewer lift station purposes.
 {¶ 14} The Grosses claim that they are neither objecting to the use of the design-build method nor contending that the City must have completed construction plans prior to the project site being appropriated. The Grosses also do not dispute that the construction of the replacement sewer lift station is for a public use. Rather, the Grosses contend that the real controversy in this case is whether the appropriation of Tract 1 is in excess of the property necessary for the proposed sewer lift station. We agree; the central issue in this case relates to excess appropriation.
 {¶ 15} Section 10, Article XVIII of the Ohio Constitution provides, in pertinent part, that "[a] municipality appropriating or otherwise acquiring property for public use may in furtherance of such public use appropriate or acquire an excess over that actually to be occupied by the improvement, and may sell such excess with such restrictions as shall be appropriate to preserve the improvement made."
 {¶ 16} In City of East Cleveland v. Nau (1931), 124 Ohio St. 433,179 N.E. 187, syllabus, the Supreme Court of Ohio held that "Section 10, article XVIII, of the Ohio Constitution, provides that a municipality acquiring property for public use may, in furtherance of that use, appropriate excess lands over that actually to be occupied by the improvement. Under that article, a municipality is required, not only to define specifically in its legislation the purpose of the appropriation, but it must also sustain such requirement by proof of its necessity. While a court may not disturb the reasonable discretion exercised by municipal authorities, as to the amount of excess property necessary to be appropriated in furtherance of a public use, it will not sanction an arbitrary and unreasonable taking of private property in furtherance of the contemplated use."
 {¶ 17} The Supreme Court of Ohio referred to City of Cincinnati v.Vester, 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950, in stating the authority for the principle that "under section 10, article XVIII, of our state Constitution, municipal legislation failing to define the purpose of excess appropriations in definite and specific terms cannot be sustained, and that, in applying the Fourteenth Amendment of the Federal Constitution to cases of excess appropriation of private property, the question, What is a public use? is a judicial one. It follows a fortiori that the city is required, not only to define specifically the purpose of the appropriation in its legislation, but it is incumbent upon the city to sustain such requirement by proof of its necessity, since the power granted to a municipality to appropriate excess property in furtherance of a public use is only granted when the excess is reasonably needed for that use." Nau, at 436-437.
 {¶ 18} In Ordinance No. 02-210, the City Commission found it necessary to appropriate Tract 1 to install a replacement sewer lift station. Specifically, Ordinance No. 02-210 states the following:
 {¶ 19} "That the City Commission of The City of Springfield, Ohio, hereby finds it is necessary and declares its intent to appropriate, for the purpose of installing a replacement Sewer Lift Station on West First Street, the interests in and to the premises owned by Donald G. And Carol L. Gross * * *."
 {¶ 20} At the hearing, City Engineer Gothard testified that the City's purpose in seeking the appropriation was to replace the existing sewer lift station. Although Gothard testified that the replacement sewer lift station would need to be larger than the existing sewer lift station, because it would be required to service an expanded area, he could not state precisely how much larger the replacement sewer lift station would need to be. Gothard did testify that the replacement sewer lift station would probably be more than fifteen percent larger than the existing sewer lift station. Given that the existing sewer lift station is located on 0.160 acres of land, the replacement sewer lift station was not expected to take up the entire 0.677 acres of land the City was seeking. Based on Gothard's testimony, the remaining portion of Tract 1 would be necessary to store construction vehicles, equipment, and materials during construction of the sewer lift station and to build another replacement sewer lift station in twenty to twenty-five years. Thus, the City does not intend to use the entire piece of property for the stated public purpose, the replacement sewer lift station, and is seeking excess property over what is actually necessary to accomplish the stated purpose. Because the purpose of the appropriation, as stated in Ordinance No. 02-210, is to install a replacement sewer lift station, the City failed to define specifically in its legislation the purpose of the excess appropriation.
 {¶ 21} We conclude that the City's failure to define the purpose of excess appropriations in definite and specific terms is fatal to the proposed appropriation in accordance with City of Cincinnati v. Vester,281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950 and City of East Cleveland v.Nau (1931), 124 Ohio St. 433, 179 N.E. 187. Therefore, the trial court properly dismissed the action.
 {¶ 22} The Grosses also contend that the City has sought to acquire property in excess of that needed for the replacement sewer lift station for the sole purpose of selling it at a profit, as evidenced by an offer made to Dr. Vicki Zunic to sell her the remainder of Tract 1 for $15,000. The Grosses contend that the City engaged in deceptive practices and sought to commit fraud by alleging the value of the land to be $5,500 and then offering to sell the remainder of the land to Dr. Zunic for $15,000.
 {¶ 23} Based on our resolution of this appeal as stated above, we find this contention to be immaterial, but note that there is conflicting evidence in the record as to whether the offer was made. Dr. Zunic did state in her deposition that the City offered to sell the remainder of Tract 1 to her for $15,000 at a meeting at which she, her attorney, and representatives of the City were present. Dr. Zunic stated that a deal was not made, because the City had not purchased the land at that point. Dr. Zunic's attorney, Thomas Lagos, stated in his deposition that he did not recall that offer being made at the meeting. Lagos stated that he did recall that there was a discussion that the sale price might be determined on a pro rata basis. Lagos offered the following example: If the City paid $20,000 for the land and used half, the City would offer to sell the remainder to Dr. Zunic for $10,000. Lagos's statements would indicate that the City was not seeking to acquire the property in excess of that needed for the replacement sewer lift station for the sole purpose of selling it at a profit or that the City engaged in deceptive practices and sought to commit fraud by alleging the value of the land to be $5,500 and then offering to sell the remainder of the land to Dr. Zunic for $15,000. Furthermore, there is a reasonable explanation for the City's having explored the possibility of selling any unused remaining land to Dr. Zunic instead of to the Grosses. Due to the configuration of the existing and proposed sewer lift stations, the unused remainder of the land would lie adjacent to Dr. Zunic's property, but not to the Grosses' property.
 {¶ 24} The City of Springfield's sole assignment of error is overruled.
 III {¶ 25} The City of Springfield's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Donovan, JJ., concur.